### THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. A. C. TRAWEEK.

#### No. 3269.

1. **Venue in Suits Against Railway Corporations.**—Subdivision 21 of article 1198 of the Revised Statutes, providing that suits against any private corporation, etc., may be commenced in any county where the cause of action arose, etc., or in which such corporation or company has an agency or representative, applies to suits against railway companies.

2. **Agency.**—A general passenger agent for the State having an office in a county other than one through which the road runs, is such an agency as is contemplated by the statute.   Service upon such agent will bind the company represented by him.

3. **Contributory Negligence—Charge.**—See facts tending to show contributory negligence on part of the plaintiff suing for damages for injuries inflicted by the cars of defendant, so as to require that such issue be clearly submitted.   See instruction refused, which refusal was material error.

4. **Risks Assumed by Railway Employe.**—Where an injury is caused by a train belonging to a railway company, the injured party not being an employe of such company but of another company, upon which he was engaged at the time, the question of risks assumed does not arise.   See facts.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.
The opinion states the case.

· *E. D. Kenna* and *M. R. Smith*, for appellant.—1.   The defendant having a fixed domicile in the State, the venue of suits against it is controlled by such domicile, and must be brought in the county or counties of its domicile.

2.   George A. Knight was not the character of agent contemplated by the statute upon whom service had would confer jurisdiction over defendant company.

Statutes in relation to the venue:   Acts of 1874, sec. 1, p. 31; Sayles' Civ. Stats., art. 1198, sec. 21.

Statutes in relation to service of process:   Acts of 1874, sec. 2, pp. 31, 107; Sayles' Civ. Stats., art. 1223; Sayles' Early Laws, art. 1755, sec. 9; Id., art. 2393, sec. 9; Pasch. Dig., arts. 1430, 4888; 2 Sayles' Civ. Stats., p. 723.

Private corporations in contemplation of the Constitution of 1876 and the statutes:   Const., art. 12, secs. 1, 2; Const., art. 7, sec. 30; Sayles' Const. His., p. 569; Pasch. Dig., art. 5935, subdiv. 8; Sayles' Civ. Stats., arts. 565, 566.

Railway corporations not contemplated by the Constitution or statute in the words "private corporation:"   Const., art. 10; Sayles' Civ. Stats., art. 4099.

Construction of statutes:   Sayles' Civ. Stats., art. 3138, subdiv. 6; Austin v. Railway, 45 Texas, 251, 252; 9 Bacon's Abridg., p. 243; Ex Parte Marmaduke, 91 Mo., 255; Rex v. Sparrow, 2 Strange, 1123; Rex v. Loxdale, 1 Burrows, 445.

Decisions on the law of venue and service:   Green & Meyer's Practice, sec. 645; 10 How. Pr., 403; 17 How. Pr., 403; 48 How. Pr., 650; 31 Barb., 138; Belden v. Railway, 15 How. Pr., 17; Jenkins v. Stage Co., 22 Cal., 537; Richards v. Railway, 8 Clark (Iowa), 260; Railway v. Gage, 63 Texas, 568; Cotton Press v. Bradley, 52 Texas, 597.

3.   The charge failed completely to submit the law of contributory negligence as applicable to the pleadings and evidence in the case; and further, the charge fails to instruct on the issue made by the pleadings and evidence, as required by law.   Railway v. Philips, 63 Texas, 593; Barkley v. Tarrant County, 53 Texas, 251; Railway v. Le Gierse, 51 Texas, 202; Young v. Ridenbaugh, 67 Mo., 574; Dunn v. Dunnaker, 87 Mo., 602.

4.   The defendant was entitled to have the jury fairly and fully charged as to its defense of contributory negligence.   Sayles' Civ. Stats., art. 1317, notes 1, 2, 3; Railway v. Richards, 59 Texas, 375.

Refusing to define "ordinary care and caution" when reversible error: Railway v. Oram, 49 Texas, 346; Railway v. Crowder, 63 Texas, 502.

5.   Defendant was entitled to the special charges asked, as they covered issues made by the pleadings and evidence—that is, plaintiff being fully acquainted with the dangers incident to the duties of an en-

gineer, and the oiling of his engine being one of those duties, and being injured while engaged in the performance of such duty, defendant would not be liable. Railway v. Callbreath, 66 Texas, 528; Bauer v. Railway, 46 Ark., 394; Clark v. Railway, 92 Ill., 43; Railway v. Dillard, 70 Texas, 63; Crowder v. Railway, 63 Texas, 502; Cagney v. Railway, 69 Mo., 416.

*J. C. Kearby, J. M. McCoy,* and *J. R. Hayler,* for appellee.—1. The agency and representative of appellant, maintained by it as a corporation at Dallas, Dallas County, Texas, gave venue. Rev. Stats., art. 1198, sec. 21; Railway v. Horne, 69 Texas, 646; Railway v. Hill, 63 Texas, 383.

2. Alleging acts done, when the manner of doing such acts constitutes negligence, does not allege contributory negligence, when such negligent manner is negatived by the allegations of the petition. Railway v. Kirk, 62 Texas, 232; Railway v. Cowser, 57 Texas, 302.

3. It is not error, when the issues are fully submitted by the general charge, for the court to refuse other charges erroneously drawn, which, if correct, would only be repetition, and which assume issues not in the case. Railway v. Eckford, 71 Texas, 274; Rosenthal, Meyer & Co. v. Middlebrook, 63 Texas, 339; Tucker v. Hamlin, 60 Texas, 176; Hays v. Hays, 66 Texas, 609.

4. A person engaged in an avocation that is dangerous does not thereby lose his right of action for an injury caused by the negligence of another. Railway v. Hampton, 64 Texas, 429.

HOBBY, Presiding Judge, *Section A.*—This suit was brought by appellee against appellant, in the District Court of Dallas County, for personal injuries. There was a trial by a jury, and verdict and judgment was rendered for appellee for $2000 actual damages, on October 11, 1889, which is appealed from.

The first error assigned by the appellant is the overruling by the court of its plea to the jurisdiction. At the first term after the filing of the petition, at the March term, 1889, the defendant filed an answer, containing among other defenses a plea of privilege properly sworn to; alleging that the cause of action did not accrue in Dallas County, and denying that it had any agent in said county at any time; that its line of road was operated through Lamar County, where it had such local agent. This plea was tried by the court, and after hearing proof, it was overruled.

Citation in this case was served on George A. Knight as appellant's agent. He testified, that at the time of the service of this process on him he had an office at No. 508 Main Street, Dallas, Texas. Was passenger agent for defendant company for the State of Texas when served. His business was to procure all of the passenger and traffic business he could, and to advertise and canvass as such agent throughout the State.

He traveled most of his time, but was in Dallas about one day in six. Defendant company owned and operated no line of railway in Dallas County, nor did it have "a local agent representative" there. Had both in Paris, Texas. He further stated, that he had a sign hung up on the wall of the room, to-wit, "Frisco Line," which was the name under which defendant company advertised and was known by; that this was witness' headquarters as such agent—his place of business— and he was to be found there when not traveling; did his correspondence there and received his correspondence there. Witness rented this place himself and defendant paid all his expenses, and witness sent up this rent to the defendant as expenses, which the company paid. He rented this place to subserve him as Texas passenger agent. Witness recognized the circular shown him, and says it is published by the company, the defendant, and circulated, and witness circulated it as such agent. This circular was introduced in evidence, and recited the superior advantages of defendant's line of road, and was signed by the witness as its agent, 508 Main Street, Dallas, Texas.

The contention of appellant is, that subdivision 21 of article 1198 of the Revised Statutes, which provides, that suits against any private corporation, etc., may be commenced in any county where the cause of action arose, etc., or in which such corporation or company has an agency or representative, etc., does not apply to railways. That they are not "private corporations" within the meaning of the statute. The last clause of this subdivision is as follows: "And suits against a railroad corporation, or against any assignee, trustee, or receiver operating its railroad, may also be brought in any county through or into which the railroad of such corporation extends or is operated."

In Houston & Texas Central Railway v. Hill, 63 Texas, 383, it was in effect held, that a railway company was a private corporation as that term is used in the first clause of subdivision 21, and that a suit was maintainable against it thereunder in the county "where the cause of action arose." That a railway or canal company or other company of that kind created for the public benefit is in that sense a public and not a private corporation is not questioned. But it is well recognized, that where the entire interest does not belong to the government, or if the corporation is not created for political or municipal power, it is a "private corporation." Banks, bridges, turnpikes, railways, and canal companies are designated as examples of corporations in which the uses may be called public, but the companies are private corporations." 10 Myer's Fed. Dec., sec. 986.

If a railway company is not (as appellant insists) a private corporation within the meaning of that language as used in the first clause of subdivision 21, it must result from this, that a suit against it under that law can only be brought in those counties into or through which the road extends, or is operated, without regard whether it has an agent

or representative in such counties. And further, it must follow that such suit may not be maintainable against the railway company in a county where it may have such agent or representative. It was clearly not the purpose of the law to confine the venue, under the statute referred to, to counties through or into which the road extended or was operated, and exclude those counties into which no part of the road extended, although in the latter a large amount of its business might be transacted and important corporate powers might be performed by its agent.

Appellant's argument is, that it is unreasonable to suppose that it was intended to confer jurisdiction by the character of agency established by the facts in this case. Under the construction contended for, a case might arise in which but a fractional part of a mile of the road extended into or through a county where none of the company's business was transacted, and where there was no exercise of the corporate franchise, jurisdiction would be conferred. But in the county where through an agent, although no part of the road extended into it, large corporate powers were exercised, the suit could not be brought. An interpretation of the statute resulting in this is not sustained by reason as sound as that upholding the construction which the appellant attacks.

The last clause in subdivision 21 was intended to provide, that in addition to suits which might be brought against a railway, it being a "private corporation," in a county where the cause of action arose, or it had an agency or representative, it could also be sued in a county into which its road extended or was operated.

Independently of the views above expressed, the defendant answered in this case, and under the authority of York v. The State, 73 Texas, 653, and other cases since, this was an appearance which gave the court jurisdiction.

The second and third assignments are, that the court erred in overruling defendant's general exception to the petition on the ground that it disclosed by its allegations that appellee's contributory negligence was the proximate cause of the injuries he complained of, and in overruling defendant's special exception to the claim set up for exemplary damages.

Upon an examination of the record, we are not able to find that there was any action whatever taken by the court on the demurrers referred to. Under these circumstances, it has been held in numerous cases that assignments of the above character will not be considered.

The view we take of this case will necessitate a reversal of the judgment; but as many of the questions presented in the brief of appellant's counsel will not probably arise on another trial, we do not think it is essential to consider each of the errors assigned.

The decisive issue in the case was, whether the plaintiff was guilty of contributory negligence. There was no other controverted issue of an important nature. The answer expressly admitted that appellant, as plaintiff alleged, operated a line of railway running from the city of Paris northerly to the State line; that it there connected with the Gulf, Colorado & Santa Fe Railway at the time stated; that the transfer of cars was there made as alleged onto the latter road; that the plaintiff had been long prior to November 24, 1888, and was then, an engineer in the service of the Gulf, Colorado & Santa Fe Railway Company; and, as alleged, holding his said train at the time, that defendant might attach the sleeper coach onto his train to be hauled south, and that it was usual for him to so hold said train. It admits that at that time it directed its said servants to transfer and attach said sleeper coach to plaintiff's train, and admits that plaintiff was at said time oiling his engine, as was usual for him to do; admits that his arm was caught in the wheel of the engine; and further admits that in making said transfer and attachment an engine is required and used to move the cars and coaches over said connection. Defendant admits that usually its said servants had employed a switch engine to move and transfer its said coaches.

The defense pleaded was, in substance, that the Santa Fe Railway Company, plaintiff's employer, negligently constructed its track alongside the union depot, where the Santa Fe train was standing on the morning of the accident, at a down grade, and that plaintiff's co-servants on his train had negligently failed to set the brakes on said train, as they should have done; and because of plaintiff's own want of ordinary care in oiling his engine under the circumstances, caused the injury, and not the negligence of this defendant; that while his said engine and train were standing on the track of the Santa Fe railway just east of the union depot, with brakes off, on a down grade from twenty to forty feet to the mile, and before the said Pullman coach had been coupled on to plaintiff's said passenger train that morning, which coupling of said coach he knew, or ought to have known, had to be made, he, the said plaintiff, carelessly and negligently commenced and was oiling his engine; and in oiling said engine he negligently and carelessly put his hand and arm between the spokes of the right drive wheel just under the engineer's cab, and in that position was working when the Pullman coach was coupled on to the rear end of his train, which act of coupling shoved the engine forward, which caught his arm and mashed it. That it was caused by the careless and negligent act of the plaintiff himself, and not by the negligence of the defendant.

As the admissions contained in the defendant's answer dispense with much of the evidence usual in this class of cases, we have made copious extracts therefrom, with a view to abbreviating the statement of the

facts proved as much as is consistent with a proper understanding of the case. The following statement of the circumstances under which the plaintiff was injured will make clear the questions presented:

The record discloses the fact that appellant's road, on the 24th of November, 1888, connected at Paris, Texas, with the Gulf, Colorado & Santa Fe Railway going south, and that it was the well understood custom and a part of the former railway's duty, growing out of an arrangement between them, to transfer the "sleeper" from its train to that of the Gulf, Colorado & Santa Fe train. The appellee, the engineer on the latter road, knew this, and on the morning mentioned, about 9 o'clock, while his train was standing on the track at the union depot in Paris awaiting this transfer, he was engaged in oiling and packing the boxes of his engine. He saw that the appellant's train, with the sleeper, had arrived. It was about the usual time to detach the sleeping coach from appellant's train and attach it to the Gulf, Colorado & Santa Fe train. In oiling the boxes, as stated, appellee's arm was in the driving wheel between the spokes. At this time the sleeping coach, pushed by the engine of appellant, struck the Gulf, Colorado & Santa Fe train, moved the engine appellee was oiling, and his arm was caught in the wheel and bruised and injured. There was evidence that the company furnished the appellee with packing irons to pack the boxes with, and to avoid the use of the hands for this purpose.

A witness standing near the plaintiff when he was oiling the boxes testified, that he could see the sleeper. Saw it coming. Hallooed to plaintiff three times to "look out." Said to the plaintiff, that no road could pay him enough to induce him to put his hand in there [referring to the plaintiff's hand being between the spokes of the wheels]. Plaintiff replied that was the way he made his money.

There was some conflict in the evidence on the issue as to whether the servants of appellant were guilty of negligence in the manner in which they detached the sleeper from appellant's train and attached it to the Gulf, Colorado & Santa Fe train. Some of the testimony tended to show that no signals were given, and that the transfer was made with considerable force. The weight of the evidence was to the effect that it was done with care, and that no greater force or power was used than was safe and necessary.

The testimony was contradictory as to whether it was appellee's duty to oil his engine immediately after it had been brought out from the round house by the round house crew and placed at the union depot on the track for use on that morning. If, however, this was his duty, there can be no doubt that upon the controlling issue in the case, whether appellee was guilty of negligence in the performance of this duty under the circumstances and at the time revealed by this record, there was a sharp conflict in the evidence. Considering the proof in

connection with the admissions contained in defendant's answer, this was the material issue.

In the first paragraph of the instructions the court charged the jury, that "in making the transfer of the sleeping car from defendant's road at the terminus at Paris, Texas, and attaching said sleeper to the train on the Gulf, Colorado & Santa Fe Railway, it was incumbent on the defendant and it was its duty to do this in a prudent, safe, and cautious manner, in such a way as not to endanger the life or limbs of any one connected with said Santa Fe Railway."

The jury were further instructed as follows: "In this case, if the evidence before you satisfies your minds that at the time alleged in his petition the plaintiff was an engineer in charge of a passenger train on the Gulf, Colorado & Santa Fe Railway, at Paris, Texas; and as such engineer was, at the time alleged, in the regular discharge of the usual and ordinary duties incident to his position, and that without any fault or negligence on his part, but through the carelessness and negligence of those in charge of a sleeping car then being detached from the defendant's line of road and attached to a train on said Gulf, Colorado & Santa Fe Railway, the plaintiff sustained the injuries complained of, then the plaintiff would be entitled to recover compensation for the actual damages he sustained by reason of said injury; such actual damages would include reasonable compensation for loss of time occasioned by such injuries, expenses incurred for medical attention, the physical pain and mental anguish suffered by plaintiff and resulting from such injuries; and you may, in estimating such actual damages, also consider the probable effect of such injuries in impairing the power and capacity of the plaintiff in the future from earning a livelihood. And in determining whether the defendant was negligent and careless in detaching said sleeper and attaching it to the train of which plaintiff was engineer, you will look to and consider the evidence with reference to the rate of speed at which it was run, the notice given of its approach, the grade of the railroad where the accident occurred, the kind of engine used in making the transfer; and if, after considering all the evidence before you on this point, you find and believe that those in charge acted with ordinary prudence and caution in transferring the sleeper, then the plaintiff can not recover in this case, and you should find for the defendant."

The third paragraph was as follows: "If you are satisfied from all the evidence before you that the plaintiff sustained the injuries complained of by him at the time charged in his petition, and you are further satisfied that such injuries were sustained in any other manner than that alleged by him, or if you believe from the evidence that at the time of the accident the plaintiff was not engaged in the discharge of the usual and ordinary duties incident to his position as engineer, but was doing something not usual and ordinary for an engineer in

charge of a train, and that by reason thereof he contributed to the bringing about of the accident complained of, then and in either event the plaintiff can not recover."

The appellant requested the following charge: "If the jury believe that plaintiff while oiling and fixing one of the driving boxes of his engine was injured, and at the time he was, under the circumstances detailed in the evidence, guilty of negligence in using his hand and arm in doing the work, and this negligence contributed to his injury, he could not recover."

The court was further requested to instruct the jury, that plaintiff was bound to exercise such care as was commensurate with the danger of the employment in which he was engaged at the time of the injury, and if he did not use such care, and by its exercise could have avoided the injury, he could not recover. Ordinary care is such as a prudent man would exercise under similar circumstances.

The general charge of the court, as well as the special instructions refused, are made the basis of several assignments of error, which we do not believe it is necessary to consider and dispose of seriatim.

The charges requested, we think, present more clearly than was embodied in the general charge the law applicable to the facts in this case, and the substance of them should have been given. The charge of the court, in a brief and general way, does seem to recognize the fact that plaintiff must have been without fault to recover. Still, the vital issue, whether he was negligent at the time of the injury, by reason of the fact that he was engaged in the performance of an act which contributed to his injury, was pointedly submitted in the instruction asked.

The court's charge, we think, laid too much stress on the question, whether at the time of plaintiff's injury he was occupied in the performance of his usual duties, and made the decision of the case turn rather on whether it was in the line of his service to oil and pack the boxes or oil the engine, than on whether, in view of his knowledge of the fact that the transfer of the coach was made at that time and the manner of making it, he was guilty of such negligence in performing that service at that time and under such circumstances as would preclude his recovery.

The charges above requested properly presented this issue, and should have been submitted to the jury. The refusal to do so justifies and requires a reversal of the judgment. Under the facts of this case we do not think the special charge requested by appellant, submitting the issue as to whether plaintiff in entering into the employment of the Gulf, Colorado & Santa Fe Railway Company assumed the risks incident to the transfer of the sleeper. The suit was not against that company. No relations of master and servant growing out of a contract existed as between appellant and appellee.

For the reasons indicated, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 22, 1892.