## LOUISIANA & TEXAS LUMBER COMPANY v. JANE A. BROWN ET AL.

Decided April 9, 1908.

**1.—Negligence—Moving Cars on Switch.**

Evidence considered and held to present questions of fact as to the negligence of defendant and due care of plaintiff, in a case where the employees operating an engine on defendant's lumber road, without warning or precaution, backed same against cars standing on a siding, injuring plaintiff, an employee of a boarding house for mill hands. who was standing behind a water car getting water from the tank thereof.

**2.—Same—Pleading.**

The petition need not negative the negligence of plaintiff unless the same prima facie appears from its allegations. Pleading held not subject to demurrer on the ground that it showed such negligence.

**3.—Negligence—Choice of Unsafe Position.**

Circumstances considered in case of one, not an employee, injured by the movement of a water car while drawing a bucket of water therefrom, and held not to justify a peremptory instruction that plaintiff assumed the risk, or was to be held negligent as matter of law, in choosing a dangerous position behind the car, instead of a safe one at a faucet on the side of another car. Also instructions held to properly present such question as one of contributory negligence and an issue of fact.

**4.—Negligence—Evidence.**

Where defendant furnished water in tank cars for the use of its employees and others in the neighborhood of its lumber mill, evidence that the usual and customary place to draw water from the tank was at the rear of one of the cars was admissible as bearing on the care due from defendant to avoid injury to persons so engaged when running its locomotive in on the same track.

**5.—Negligence—Question of Fact.**

Where it was known that employees of a lumber company and others, including the keepers of a boarding house for mill hands, obtained water from a tank car placed by the mill company on a siding for that purpose, and from a faucet at the end of such car, it was a question of fact whether due care to avoid injury to such persons on the part of those running a locomotive onto such siding did not demand a warning by whistle from such locomotive, its bell being cracked, or an examination to discover whether anyone was in a place of danger, before permitting the engine to strike such water car.

Appeal from the District Court of Houston County. Tried below before Hon. B. H. Gardner.

*E. J. Mantooth* and *Nunn & Nunn,* for appellant.—Plaintiff placed herself on the track of said railroad, which was in itself an act of negligence which contributed to and was the direct and proximate cause of her injury under the circumstances, and plaintiff fails to allege any good reason or excuse for placing herself on the track of said railroad; and further, she fails to show in her petition that it was necessary that she draw water from said tank, and fails to show that she could not have drawn water from said tank at some other place not on the track of said railroad. Gulf, C. & S. F. Ry. Co. v. Schroeder, 88 Texas, 162-3; International & G. N. R. Co. v. Lewis, 63 S. W., 1092; Texas & Pac. Ry. Co. v. Reed, 88 Texas, 439; St. Louis S. W. Ry. Co. v. Martin, 26 Texas Civ. App., 231; Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 311; Dallas & W. Ry. Co. v. Spicker, 61 Texas, 427; Dallas & W. Ry. Co. v. Redeker, 67 Texas, 181; Texas & Pac. Ry. Co. v. Murphy, 46 Texas, 363; Brickett v. Ry. Co., 42 Am. & Eng. Ry. Cases, 107.

Where a person run upon and killed by a railway train was guilty of contributory negligence in not discovering and avoidng it, there can be no recovery for his death on account of negligence of defendant's employes in failing to discover his peril in time to avoid striking him. Texas & P. Ry. Co. v. Staggs, 90 Texas, 458; Olivaras v. San Antonio & A. P. Ry. Co., 77 S. W., 981; Gulf, C. & S. F. Ry. Co. v. Townsend, 82 S. W., 804; Taylor v. Houston Electric Co., 85 S. W., 422; International & G. N. R. Co. v. Jackson, 41 Texas Civ. App., 51; Houston & T. C. Ry. Co. v. Ramsey, 97 S. W., 1067; Galveston, H. & S. A. Ry. Co. v. Murray, 99 S. W., 148; Kelley v. Gulf, C. & S. F. Ry. Co., 101 S. W., 1166; Houston & T. C. Ry. Co. v. Kauffman, 101 S. W., 817; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 304; Railway Co. v. Bracken, 59 Texas, 73; Bennett v. St. Louis S. W. Ry. Co., 36 Texas, 459.

(Fifth assignment of error.) The court erred in overruling defendant's objections to the testimony of plaintiff, Jane A. Brown, Leola Freeman, R. L. Thornton, E. W. Thornton, E. L. Brown and J. L. Brown, to the effect that the place where defendant (meaning plaintiff) was standing at the time she was drawing water from the end of the tank-car on the railroad track, when she was injured, was the usual and customary place to draw water from said tank-car, and was the place used by other persons living around there for drawing water, because said evidence was irrelevant, and incompetent, in this, it being

the usual and customary place for drawing water, and other parties drawing water at this place would or could not excuse plaintiff of her act in going between the cars at the time she did under all of the circumstances, and for the further reason that what other persons did, so far as exposing themselves to danger, could or would not excuse the plaintiff of the duty she owed to herself to avoid danger and the injury she received.

*J. W. Madden,* for appellees.—Whether or not certain facts constitute either assumed risk or negligence, and whether or not they contributed to the injury, are questions for the jury, and the servant does not assume such risks as result from the master's negligence. Texas & P. Ry. Co. v. Murphy, 46 Texas, 366; Houston & G. N. Ry. v. Randall, 50 Texas, 260; Chatham v. Jones, 69 Texas, 746; East Line & R. R. Ry. Co. v. Scott, 71 Texas, 710; Gulf, C. & S. F. Ry. Co. v. McWhirter, 79 Texas, 21; St. Louis, S. F. Ry. Co. v. Christian, 8 Texas Civ. App., 246; Hammon v. Railway Co., 13 Texas Civ. App., 633; Gulf, C. & S. F. Ry. v. Calvert, 11 Texas Civ. App., 297.

It is the settled rule in this State, that railroad companies, at crossings and such portions of their tracks as may be commonly used as a footway or crossing, which is known to the companies, and at which persons may be expected to be, must use ordinary care to discover their presence and to avoid inflicting injury upon them; and that, in the exercise of that degree of care, they must use such an amount of vigilance and caution as a man of ordinary prudence would use under like circumstances. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 622; Texas & Pac. Ry. Co. v. O'Donnell, 58 Texas, 42; Gulf, C. Ry. Co. v. Hewitt, 67 Texas, 479; Eason v. Sabine & E. T. Ry. Co., 65 Texas, 577; Bonner v. Bryan, 79 Texas, 540; Texas & P. Ry. v. Pennell, 2 Texas Civ. App., 128; Johnson v. Gulf, C. & S. F. Ry. Co., 2 Texas Civ. App., 142; Hargis v. St. Louis & T. Ry. Co., 75 Texas, 19; 19 Am. & Eng. Enc. of Law (1st ed.), 937; St. Louis & T. Ry. Co. v. Crosnoe, 72 Texas, 79.

LEVY, ASSOCIATE JUSTICE.—The appellee sued the appellant company for damages for personal injuries sustained by her through the alleged negligent acts of the operatives of a train of appellant while backing on to a spur track against a water tank car from which appellee at the time was drawing a bucket of water. The case was tried to a jury, and upon the verdict a judgment was rendered in favor of the appellees; and from which judgment the appellant company has brought the case on appeal, seeking to have same reversed for the errors assigned.

The evidence in the record substantially establishes that the appellant company is a private corporation, and owns and conducts a saw mill; and for the purpose of transporting logs and other commodities to the saw mill, and for carrying freight for hire, operates a line of railway with steam engines and cars. At a point on the railway line, called in the evidence "the front," situated about twelve miles east from the town of Crockett, the appellant company maintained a number of switch and spur tracks which were used in various

ways and for various purposes—in taking care of and transporting logs to the mill, and switching, and for holding engines and cars over the night. At this point Mrs. Ely Thornton ran a boarding-house, at which some of the employes of the appellant company lived and took their meals. The appellee, Miss Jane A. Brown, is the sister of Mrs. Thornton, and assisted her in doing the cooking and house work at the boarding-house. The boarding-house is situated between the main line of the railway and two spur tracks, and is on the south side of the main line. One of the two spur tracks mentioned is located about ten feet distant from the boarding-house; and beginning near the west end of the house, extends east about 75 yards in length. This particular spur track is called the "water track," and thereon were situated and kept two water tank cars, and there was kept on this track also during the nighttime after work hours in the evening, engine No. 105 and the trailer car that kept the tools. The appellant company provided these water tank cars and kept them filled with water from a well at the mill seep, for the use of the employes stationed and residing there, and for the use of the boarding-house. These tank cars for water, after being daily freshly filled with water, would be placed on this side-track, and from which the employes would draw water for use as they needed the water during the day or night. There were buildings occupied by employes on both sides of the track, but mostly located on the south and southwest. The main line track ran into the mill. At six o'clock in the evening the work hours of the day closed and the employes stopped work, and it was the custom to bring in engine No. 105 and put it for the night with the trailer car on this water track; and with this practice the appellee, Miss Jane A. Brown, was familiar. One of these water tank cars was equipped with two faucets on each side to draw the water from; and the other tank car was provided with two faucets on one side and one faucet in the end of the car, to draw water from. In the general build of this latter tank car there was a stringer, or reacher, in the end of it, extending forward and out. Though the stringer was not built for the purpose, yet it was generally used by the people there as a convenience for setting the bucket on while drawing the water. The appellant adopted this mode and way of providing water at the front, because of the impurity of the water around there. It is not shown by the evidence that the appellant company had any connection with the boarding-house, or that appellee was in the employ of the appellant company. The boarding-house was run in the interest of the employes of the appellant company; but inferably from the record, independent of the appellant company, yet with the consent of the appellant. The appellant company authorized the use of water from the tank cars, to the boarding-house manager. On the 20th day of August, 1906, between six and seven o'clock in the evening, and before dark, appellee went to the tank car to get a bucket of water from it for use at the boarding-house. At this time there were two tank cars there on the track standing together, and two cars loaded with cross-ties on the west end up to and next the water tank car. Appellee, for the purpose of drawing the bucket of water, went to the end of the rear tank car. To reach the faucet in the end of the car she

stood in the space between the cars. The space between the tank car and the other car was close, but apart enough to stand sidewise; rest the bucket on the stringer, and draw the water. At the time she went to get the water the appellee testifies that engine No. 105 was not upon the water track and was not going upon the same, and, so far as she could know and see, had not yet come in from work for the evening; that thereupon she proceeded to draw the water. While the appellee was drawing the water in the manner mentioned, the appellant's engine, without any knowledge thereof on the part of the appellee, was backed from the main line and to the water track, pushing two cars; and while thus backing struck against the tank cars, knocking appellee down on the track and injuring her as alleged in her petition.

The evidence is conflicting as to whether the signals or notice of the approach of the engine and train were given. There is evidence in the record on the part of the appellee that no signal or notice of the approach was given. Her evidence is positive that she did not hear any bell ringing, or know of the presence, or hear the approach of the engine at the time. There is some evidence on the part of the appellant that the bell on the engine was rung as it started in on the water track at the switch; but the undisputed evidence is that the bell on the engine was in a defective condition, having a full split in the side, and would not make a loud noise. There is no evidence that the engine whistled. The engineer testifies that he operated the engine on to the spur track and on the water track through signals given him by the brakeman, who was walking on the ground just ahead; that he did not see appellee drawing the water, and could not have seen her, because he could not see over the tank of the water tank car, which is about five feet high above the flat car on which it is situated; that he knew for what purpose the tank cars were kept there, and knew that the people there got water from the tanks at all times and from the end of the car. The brakeman, who was signalling the train ahead, says that he was next to the first tank car at the time of the injury, and had waved his hand for the engineer to come on back; that he did not see anybody ahead in front of the tank car, because he was not that far up; and that he could not have seen them from where he was; and because he was not looking out for such purpose to see if anybody was at the end of the tank car getting water, that no other signal was given but what he was giving with his hand; that the bell on the engine was rung as the engine started in on the water track at the switch, but that he did not know whether it was kept continually ringing or not; that he knew that the water tank cars were kept there, and the purpose for which they were kept there. It was proven by the appellee that the end of the tank car was the usual and customary place to draw water from, and was generally used for the purpose by the employes and the boarding-house people, and this was known to the operatives of the engine and the people there generally; and that to rest the bucket on the stringer at the end of the car and let water run in it was customarily done by the people there, and that to draw water from this end of the car it was proper and necessary to stand in front of the car and on the track to reach the faucet, and that this practice was commonly done by the people there; that she

was advised at the time that she went after the water, by her niece, that there was no good water in the first tank car, and for this reason she went to this usual place at the end of the rear tank car to get the water.

The general finding of the jury involved the finding that the operatives of the train failed to use proper care to give proper warning of its approach under the circumstances, and that appellee did not fail to exercise proper care and prudence, under the circumstances, for her safety. The evidence in the record is sufficient to sustain these findings. We can not say, as a matter of law, that the evidence fails to show negligence of the operatives of the engine, proximately causing the injury to appellee; nor that appellee was guilty of contributory negligence. The frequent and customary use at all times of the faucet provided at the end of the tank car, made the situation around the car at all times a matter known to the operatives of the engine and to the appellant company, requiring the duty of the exercise of proper care in backing the engine on to the water track against the tank cars located there, in giving sufficient warning of the approach of the engine and cars to the people who might at the time be at the tank car getting water. Proper care in warning of the approach of the train in this case might have required the whistle to be sounded, especially as the bell was broken; it might have required a proper lookout by the brakeman who was guiding the train in on to the water track at the time. While appellee may have stood on the track in front of the tank car drawing water therefrom, yet the act in so doing would not be so obviously dangerous, with no engine on the track at the time she went there, as to be negligence on her part as a matter of law. Taking her testimony in the record, it was purely a matter of fact as to whether her conduct and act at the time under all the circumstances was negligence *vel non* on her part. We assume the truth of the general findings of the jury, and therefore conclude that the appellant company was guilty of negligence proximately causing the injury to appellee, and that appellee was not guilty of contributory negligence.

After stating the facts the complaint of the appellant in its first assignment of error is to the overruling a demurrer and certain exceptions to the petition of appellee. The contention is that the facts stated in the petition show negligence on the part of the appellee as a matter of law. The petition, so far as is necessary to be stated, on this subject alleges that the appellant company furnished and provided water through means of water tank cars for use of the employes and a boarding-house kept for their benefit at "the front," a place maintained by appellant for the conduct of its business and where its employes worked; that to enable the people to get the water the water tank cars were kept located on a spur track built for the purpose near the boarding-house; that at the time in question, for the purpose of getting a bucketful of water from the tank car, appellee went to the tank car, "the said water having to be drawn from near the end of said car, which was the usual and customary place for drawing the same, and it being necessary to place the vessel used for carrying the said water on the end of said car, as the water should be drawn,

from the said tank, and while drawing the said water plaintiff was standing on the said track at and near the end of said car, which was the usual and proper and customary place for one to stand while engaged in drawing water from the said tank, and which was done with the knowledge and consent of the defendant." The petition continuing states that while thus drawing the water an engine with cars attached was backed on to the spur track against the water car suddenly and negligently and without warning or signal of approach, knocking her down and injuring her, and "plaintiff not knowing or having any reason to believe that said engine was there, or anywhere near by, until she was struck as aforesaid." The rule in this State is that a petition need not negative the negligence of the plaintiff unless the averments in the petition show *prima facie* that the plaintiff was negligent. Houston & T. C. Ry. v. Cowser, 57 Texas, 293; Texas & Pac. Ry. v. Murphy, 46 Texas, 357. We do not think the petition commits the appellee to the charge of negligence. The petition develops the facts that the water tank provided by appellant for the use of the people there, was constructed by appellant with a faucet in the end of the tank to draw the water, and that this mode of construction of the tank necessitated the person drawing the water from this end of the tank to stand in front and on the track of the railway, and that the tank car occupied a particular position on the spur track expressly located there by appellant for the general use of the people there, and that it was used at all times by the people there. Appellee accounts for her conduct and act in being on the track at the front end drawing water, by stating the facts that "this was the usual and customary place for drawing the same," and "while drawing the water plaintiff was standing on the track at and near the end of said car, which was the usual and proper and customary place for one to stand while engaged in drawing water from the said tank, and which was done with the knowledge and consent of the defendant." This accounts for the mode and means of access to the faucet and at the usual place, and known to the appellant company. All these facts attended and surrounded her occupance of the position. As to its being a reasonably safe place, she states that the tank car was located on a spur track near the boarding-house, and that at the time she went to the position to draw the water she did not know or have any reason to believe that the engine "was there or anywhere near by." The existence of contributory negligence is sufficiently negatived by the facts alleged.

The second assignment of error complains of the refusal to give the following special instruction:

"You are charged that the plaintiff in going between the cars and drawing water from the end of the tank car, when there was a safe place in said tank car for drawing water, which was known to her at the time, she assumed the risk and danger incident to her act in going between said cars, which prohibits her from recovering in this case, and you will find for the defendant."

The instruction assumes as a matter of law that because appellee went in front of the tank car to draw water from the faucet in the end of the tank car, instead of drawing the water from the faucet

on the side of the car, she was precluded from recovering for any injury occasioned to her resulting from the engine backing cars against the tank car at which she was drawing the water. It was the equivalent of an instruction to return a verdict for defendant. The instruction as prepared was no doubt intended to be predicated on the principle of the law of assumed risk existing between master and servant. Assumed risk and contributory negligence are distinct doctrines of law. The distinction, briefly and generally stated, is, where negligence or want of proper care on the part of a person brings about injury which he suffers, then "contributory negligence" could be applied to his act; where a servant is injured from one of the mere known dangers ordinarily incident to his service, without negligence on his part, then his injury is ascribed to one of the ordinary risks of employment which he assumed in entering upon the service. In this case, however, the relation of master and servant does not affirmatively appear to have existed between appellant company and appellee. The latter does not appear from the record to have been employed by the company, but rather appears to have been employed by her sister to work in the boarding-house. If this be true, then she was in the attitude in this case of a stranger, and not an employe, to the company, and the doctrine of assumed risk would not be applicable to the case. But whatever that fact might be, the court in the main charge properly presented the issue in the following instruction:

"If you find that at the time plaintiff undertook to draw water from the end of the tank car, it was dangerous for her to do so at said time and place, and if you further find that plaintiff knew it was dangerous, or if the danger was open and obvious to her observation, then she assumed the risk, and you should find for the defendant."

It seems to be contended in several of the propositions under this assignment in appellant's brief that the charge as prepared was applicable to the doctrine of contributory negligence as well. We do not so think, but even so the evidence in the case did not warrant the court in ruling as a matter of law, as is the legal effect of the instruction, that appellee was guilty of contributory negligence. There was evidence offered by appellee to show that the tank car was equipped with a faucet in the end for drawing the water, and the tank car was kept located on the "water track" for the purpose of enabling the employes and the boarding-house management to obtain water therefrom; that it was customary and usual to get the water from the faucet in the end provided for the purpose; that it was proper and necessary to stand in front of the car to draw the water; that the "water track" was only used this time of the evening for storing engine No. 105; that this engine, and no other engine, was not on the track or thereabouts at the time. Under these circumstances, as detailed by her, it would not, as a matter of law, be obviously a dangerous undertaking to stand in front of the tank car to draw the water. It involved the exercise of discretion and judgment, and therefore was a question of fact for the jury to determine whether she was guilty of negligence under all the circumstances in the case, precluding a recovery. The assignment is overruled.

What we have said applies to the special instruction complained

of in the third assignment. The instruction as framed did not leave to the jury to determine from the evidence by the standard of ordinary care, whether or not appellee was guilty of negligence. The charge was not a correct application of the law in this case.

The fourth assignment is overruled because the instruction as offered assumed as a matter of law that because appellee selected the end of the car to draw water from, she was guilty of negligence precluding a recovery. The question should have been left to the jury to decide whether she was guilty of contributory negligence in selecting the end of the car to draw the water from. Her act should be measured by the standard of whether an ordinarily prudent person, under the circumstances, would have done as appellee did.

The fifth assignment is overruled. The evidence was admissible and proper to visit knowledge upon the company and the operatives of the engine of the general use made of the tank car, and the manner in which it was used, and the situation around the tank car at all times. With knowledge of this situation it devolved upon the appellant to exercise the proper care to operate its engines at and near the tank car, and to keep a lookout for persons that might be using it, and to give warning to persons who might be drawing water from the car, of the approach of the engine. It visited knowledge to appellant of a situation requiring the exercise of care to avoid injury.

The error complained of in the sixth assignment is clearly a clerical error, and, taking the paragraph as a whole, could not possibly have misled the jury.

The seventh assignment is overruled.

The eighth assignment of error complains that the court erred in submitting the question of negligence to the jury, because it was conclusively shown that the operatives of the train were not negligent. We are of the opinion that the court did not err. The evidence required the submission of the issue to the jury. The engineer and brakeman each knew that the tank cars were located on this track, and that people there got water from the cars, and got it at all times and at all the faucets provided. With knowledge of this situation, it was their legal duty, in backing the engine on this track and against the tank cars, to give sufficient warning of its approach and to exercise ordinary care to avoid injuring people who might be at the car drawing water. The bell on the engine was broken, and that it would not make a sufficiently loud noise was known to the engineer. No whistle was sounded. The engineer could not see, on account of obstructions ahead. The brakeman on the ground guiding the train into the siding, did not make any effort to look ahead to see if anybody was there. He says: "I did not see anybody in between the tank cars ahead. I was not that high up. I was not looking for anything like that. If there were any signals given outside of the signals I gave to come on back there, I did not see them." We are not prepared to hold, as a matter of law, that there was no negligence on the part of the operatives of the train. It might have been in the exercise of proper care to blow the whistle, and it might have been in the exercise of proper care for the brakeman to have gone further

ahead to discover the situation there before signalling the approach of the engine. The question was properly for the jury.

What we have said hereinbefore disposes of the ninth, tenth and eleventh assignments, which are to the effect that the court erred in overruling the motion for new trial, because the verdict was contrary to the law and evidence.

The twelfth assignment is to the same effect as the fifth, and for the same reason the evidence was admissible.

The thirteenth assignment is practically a review of the questions passed on, and is overruled.

There is no error of law in the record. The evidence, though conflicting, was passed on by the jury, and it is sufficient to support their findings. We can not say that the amount of the verdict is excessive.

The case is ordered affirmed.

*Affirmed.*

Writ of error refused.