**PANHANDLE & S. F. RY. CO. et al. v. HAYWOOD. (No. 1723.)**

(Court of Civil Appeals of Texas. Amarillo. Dec. 15, 1920. Rehearing Denied Jan. 26, 1921.)

1. Railroads ⬳5½, New, vol. 6A Key-No. Series—Judgment after termination of federal control should be against government agent alone.

Where, in action for negligent operation of railroad during federal control, judgment was rendered after such control had terminated, and the agent appointed by the President had been made a defendant, it should have been against him alone; there being no liability of the railroad company in its corporate capacity.

2. Railroads ⬳372(1)—Speed not negligence.

In the absence of statutory regulations or special circumstances, a railroad company may run its trains at any speed without being chargeable with negligence.

3. Railroads ⬳372(5)—Speed at pumping station held not negligence.

A railroad company cannot be charged with negligence merely because of the speed of its train near a pumping station on its grounds, there being no crossing there, and it not being a place for stopping, merely because on the grounds, at a place in a sense apart from the tracks, the pumper lived with his family; the country being level and the tracks visible for a long distance.

4. Railroads ⬳369(3)—Must look out for trespassers.

A railroad company must at all times exercise ordinary care to discover persons on its tracks, even though they be trespassers, and in the absence of contributory negligence is responsible for damages to them from its negligence in this respect.

5. Railroads ⬳381(1)—Trespasser exposing himself to danger guilty of contributory negligence.

When a trespasser on a railroad track injured by a train is accountable for his own acts, the fact that he has exposed himself to the danger is conclusive evidence of his negligence, and defeats recovery.

6. Railroads ⬳369(4)—Absence of lookout negligence.

When a trespasser on a railroad, injured by a train, is a child or other person incapable of being charged with negligence, the company is liable for injury for failure of the operatives of the trains to exercise ordinary care to keep a lookout.

7. Railroads ⬳400(6)—Negligent lookout question for jury.

Evidence in action for death of child killed by train and for injury to mother in attempting rescue of the child, held to warrant submission of the issue of train operatives having exercised ordinary care to keep a lookout.

8. Appeal and error ⬳1062(1)—Submission of issue harmless, where finding on another sustains the judgment.

Erroneous submission of issue of negligent speed of train is harmless, where finding of negligent failure to keep a proper lookout sustains the judgment.

9. Death ⬳103(3)—Escape of child not conclusive proof of parent's contributory negligence.

That a child escapes the watchfulness of parents and gets on a railroad track is not conclusive proof of failure in their duty to exercise ordinary care to prevent it from going into danger, which would prevent a recovery for its death.

10. Death ⬳103(3)—Contributory negligence of parents question for jury.

Whether parents of a child which got on a railroad track and was killed by a train exercised ordinary care to prevent it from going into danger held, under the evidence, a question for the jury.

11. Railroads ⬳400(13)—Contributory negligence of mother attempting rescue of child question for jury.

Whether a mother, in attempting the rescue of her child on a railroad track, as to which the train operatives were negligent in not keeping a proper lookout, was guilty of such rashness as to preclude recovery for her injuries held, under the evidence, a question for the jury.

12. Appeal and error ⬳1062(1)—Submission of issue of discovered peril harmless, finding thereon being for defendant.

Any error in submission of the issue of discovered peril was not prejudicial, the jury having found thereon for defendant.

13. Negligence ⬳74—Only rashness of one attempting rescue prevents recovery.

Where one acts to save another from imminent danger brought about by the negligence of a third person, the rule of ordinary care is not applied to his act, but he is only precluded from recovering from such third person for his injury in such attempted rescue if he acted rashly under the circumstances.

14. Evidence ⬳151(4)—How danger appeared to one attempting rescue of another in imminent peril admissible.

On the issue whether one, acting to save another from imminent danger brought about by the negligence of a third person, acted rashly, evidence showing how the danger appeared to the person so acting is admissible.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Evidence ⬪473—Opinion and conclusion of nonexpert as to how situation seemed to her admissible.**

One who was injured in attempted rescue of her child on the railroad track in imminent danger through failure of train operatives to keep a proper lookout could testify that when she started to get the child off she thought she could do so without injury; as it would be hard for her by a mere statement of the surrounding facts, to portray the situation so that the jury might see it as it appeared to her at the time.

**16. Evidence ⬪474(4)—Nonexpert's conclusion as to her mental state admissible.**

A nonexpert may state that since her injury her mind is so confused that she is not able to teach school as before.

**17. Evidence ⬪150—For admission of result of experiments, exact similarity in conditions not necessary.**

For admission, in an action for the killing by a train of a child on the track, of the result of experiments as to how far a child could be seen from there, the conditions need not have been exactly the same, but only substantially so; dissimilarity affecting the weight, rather than the admissibility, of the evidence.

**18. Evidence ⬪150—Similarity of conditions of experiments for decision of trial court.**

Whether the conditions under which experiments were made so substantially similar to those under which an accident occurred as to authorize introduction of the result is for the decision of the trial court, and he has considerable latitude of discretion in deciding it.

**19. Railroads ⬪397(7)—Notice admissible on question of negligent lookout.**

Relative to negligence of train operatives in not keeping a proper lookout where child was killed on track, evidence of notice to the company's agents of a family with small children, living in a box car close to the track without fence between, was admissible.

**20. Trial ⬪85—Objection to evidence partly admissible, unavailing.**

Assignment to admission of evidence, part of which was admissible, cannot be sustained; the objection having been to all of it.

**21. Trial ⬪260(1)—Requested instruction covered by one given need not be given.**

A party's requested instruction need not be given, where fully covered by another of his requested instructions which was given.

**22. Railroads ⬪384—No assumption of risk from negligence not previously known.**

The doctrine of assumption of risk, even if applying to anything else then personal risks of the servant, could not prevent recovery by employé, living with his family on railroad, for death of his child, killed on the track through negligence of train operatives in not keeping a proper lookout; the negligence to which the risk was incident not being known by the employé till the very moment of the accident.

**23. Appeal and error ⬪739—Assignment of error held multifarious.**

An assignment of error, complaining not only of the submission of an issue of contributory negligence, but of the refusal of a charge on the issue of discovered peril, is multifarious.

**24. Appeal and error ⬪742(1)—Proposition under assignment must be germane.**

A proposition under an assignment of error dealing with a subject entirely different from that of the assignment is not germane.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by Liles B. Haywood against the Panhandle & Santa Fé Railway Company and another. From a judgment for plaintiff, defendants appeal. Reversed and dismissed as to the named defendant, and affirmed as to the other defendant.

H. E. Hoover, of Canadian, Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant.

Barrett, Childers & Deatherage, M. Cammack, and C. B. Reeder, all of Amarillo, for appellee.

BOYCE, J. This is an appeal from a judgment awarding the appellee damages against the appellants, the Panhandle & Santa Fé Railway Company, and Walker D. Hines, as Director General of Railroads, for the death of his son and injuries to his wife, both struck by a passenger train operated on the road of the defendant company, while it was under government control. The plaintiff was employed as a pumper at the railway pumping station, about 1½ miles from the station of St. Francis. He lived with his wife and children in two box cars, furnished by the defendant company, which were detached from the running gear and set on the right of way near the pump station about 50 feet from the railroad tracks; and had been so living at such place for about 18 months before the time of the accident. The children were young, the oldest one being about 3 years old, the second the one that was killed about 20 months old, and the youngest a babe in arms. There was no inclosure around the premises, and the plaintiff and his wife were in constant apprehension of danger to the children from passing trains, and were accustomed to exercise unremitting watchfulness to prevent them from getting on the tracks. Passenger train No. 117, a fast through train, with a maximum running schedule of 60 miles per hour, was due to pass this place at about 8 o'clock p. m. on the evening in question, July 9, 1919. The train was a little late, but did arrive about sundown; the witnesses varying the time between a little before and a little after sundown. The father had just left the premises to walk to St. Francis. He supposed that

the mother knew he was leaving and was watching the children, though he was mistaken in this conclusion. When about 600 feet from the premises he looked back, and saw the headlight of the engine about a mile or more away, at the same time he saw one of the children on the track, and started back, trying to attract the attention of the trainmen but did not succeed in doing so, and was about 80 feet away when the train struck the mother and child. The mother also saw the train when it was about a mile away, and started with the baby in her arms to see where the children were. She saw the 20 months old child standing on the track across one of the rails, and ran to the rescue, but was struck by the engine as she was lifting him from the track. The boy was killed and the mother injured. The train was not due to stop at this pumping station and at the time when the engineer saw the child on the track was running about 60 miles an hour. The engineer testified that he did not see the child until he was about 300 feet from him, and could not stop the train in that distance, though he did everything possible to stop as quickly as he could without injury to the train. The engineer further testified that his attention was first attracted by the older child some little distance from the track, and he blew the whistle to warn it. He then saw the mother, and later discovered the child on the track; that in the light prevailing at that time of day it was hard to distinguish objects on the track, and he was keeping a sharp lookout. The plaintiff alleged the defendants were negligent in these particulars: First, in running the train at such a high rate of speed at this place; second, in failing to keep a proper lookout to discover persons on the track; third, in failing to exercise proper care to prevent the injury after discovery of the danger. The jury found that the defendants were negligent in the two particulars first stated, and not in the third. The defendants pleaded contributory negligence on the part of the parents in failing to prevent the child from going on the track and on the part of the mother in rashly exposing herself to danger in the attempted rescue. The jury found for the plaintiff on these issues.

[1] Suit was originally brought by the plaintiff against the railroad company. After the termination of federal control of the railroads under the act of February 8, 1920 (41 Stat. 456) the plaintiff made Walker D. Hines, the agent appointed by the President to conduct litigation of causes of action arising out of federal control, party defendant. Judgment was rendered against both defendants jointly and severally. This we think was error, as there was no liability against the railroad company in its corporate capacity. The judgment should have been against the Director General alone. We have recent-ly expressed our views on this matter in the case of Walker D. Hines, Director General, v. W. M. Collins, 227 S. W. 332, and need not add anything to what we there said.

[2, 3] It is contended that the pleading and evidence were insufficient to present an independent issue of liability on the ground of negligence in the rate of speed at which the train was running in nearing the pump station. We think this position is well taken. There was no crossing at this place, no switch tracks, not even a water tank where trains stopped to water, so that there was no occasion for the trains to slow down on approach of the place, unless the fact that the family was living near the track would require this. The track at this place was graded several feet above the ground on which were located the wells, engine house, box cars, and other structures used in connection with the pumping plant, and the children were accustomed to play on the level ground in front of the box cars and near the engine house, where the father and mother could observe them. The premises were thus in a sense apart from the tracks, and there was no occasion for any one in the discharge of any duty in connection with the operation of the pumping plant to go on the track at this place. The plaintiff testified that they did not allow the children to go on the tracks, and that so far as he knew none of them had ever been on the track when a train was in sight. The country was level, and the track was straight for a distance of a mile or more on each side of the pumping station. The railroad company had the right to the exclusive use of its track at this place and did not have to anticipate a violation of this right. Ordinarily, in the absence of regulatory legislation, the railroad company may run its trains at such speed as it sees fit, and "rapidity of movement becomes evidence of negligence only when made so by the peculiar facts and circumstances surrounding the case." T. & N. O. R. R. Co. v. Langham, 95 S. W. 687; I. & G. N. R. R. Co. v. Wear, 33 Tex. Civ. App. 492, 77 S. W. 272; Railroad Co. v. Hewitt, 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32; G., C. & S. F. Ry. Co. v. Anson, 101 Tex. 198, 105 S. W. 989; Ann. Cas. 1914B, 602 et seq. The circumstances we have detailed are, in our opinion, insufficient to authorize the finding that it was the duty of the railroad company to lessen the speed of its train at this particular part of its track in anticipation that some one might be trespassing thereon, and we agree that a charge of negligence cannot be based on the independent fact that the train was running at a high rate of speed, at this place.

[4-8] The appellants further insist that the defendants owed no duty to keep a lookout for trespassers, and there could be no negligence in the failure to do this, the only liability being from injuries resulting from its

negligence in failing to exercise ordinary care to avoid injury after actual discovery of the presence of the trespasser on the track. This is the law in some jurisdictions, but not in this state. It is settled by the decision of our courts that the railroad company is at all times bound to exercise ordinary care to discover persons who may be on its track, whether or not they are trespassers, and is responsible for injuries resulting from negligence in the performance of this duty, unless recovery is defeated by the contributory negligence of the trespasser; that as a rule, when the trespasser is accountable for his own acts, the fact that he has voluntarily exposed himself to the danger is conclusive evidence of his negligence and defeats recovery; but when the trespasser is a child, or other persons incapable of being charged with negligence, liability exists for injuries resulting from failure of the operatives of the railroad company to exercise ordinary care to keep a lookout. T. & O. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; M., K. & T. Ry. Co. v. Hammer, 34 Tex. Civ. App. 354, 78 S. W. 708. The jury found that the train operatives would, "in the exercise of ordinary care to keep a lookout, have discovered said peril in time in the exercise of ordinary care to have avoided said injury." We think the facts warranted the submission of this issue and the finding of the jury thereon. The fireman evidently was not looking down the track at the time. The engineer testified that he was looking, but did not see the child until within 300 feet of it. The father saw the child on the track from a distance of 600 feet or more. Several witnesses who made experiments under similar conditions, except that they were not looking out of the cab of a moving engine, but were on foot, testified that they could see a child slightly larger than this one at a distance varying from 1,700 feet to 2,700 feet, and one witness testified that he could tell that there was some object on the track, though unable to identify it as a child, for a distance of 3,000 feet. The engineer testified that he could see an object as large as a child for a distance of 600 feet. This evidence we think, makes an issue for the jury, and warrants their finding that if the engineer had been keeping a lookout, as he said he was, he would have discovered the child when the engine was farther away from it than a distance of 300 feet. The mother missed the rescue by a fraction of a moment, and it is probable that a discovery of the child by the engineer at any considerable distance back of the 300 feet would have enabled him to avoid the injury. Since the judgment can be sustained by the finding of the jury on this issue, any error in the submission of the issue of negligence in the rapidity in the movement of the train does not require a reversal of the case.

[9-11] It is insisted that the evidence conclusively shows that the parents were guilty of contributory negligence in permitting the child to be upon the track at this time, and that this negligence will preclude a recovery for its death. It was the duty of the parents to exercise ordinary care to prevent the child from going into danger, and their neglect in such matter would preclude them from recovering, but the fact that the child did escape their watchfulness and go into danger is not in itself conclusive proof of their failure to exercise ordinary care to look after it. The facts presented an issue for the jury. Houston Street Ry. Co. v. Dillon, 3 Tex. Civ. App. 303, 22 S. W. 1066; S. A. & N. P. Ry. Co. v. Vaughn, 5 Tex. Civ. App. 195, 23 S. W. 745. We also think that it was a question for the jury as to whether the mother was guilty of such rashness in attempting the rescue as would preclude a recovery for injuries sustained by her. Wichita Falls Traction Co. v. Hibbs, 211 S. W. 287, and authorities there cited.

[12] The jury found for the defendants on the issue of discovered peril, so if there was any error in the submission of this issue to the jury it is immaterial.

[13-16] Mrs. Haywood testified that when she started to get the child off the track she thought that she would be able to do so without injury, and that she used every possible effort to do so, and that there was nothing that she could have done to have gotten the child off the track. After the witness had so testified the defendant objected, and presents an assignment, the seventh, to the introduction of this evidence the proposition being that it is immaterial to a determination of any issue in the case "what the witness thought of the danger in attempting to rescue the child from the train." In the cases cited in support of this proposition (G., C. & S. F. Ry. Co. v. Guess, 154 S. W. 1061, and Railway Co. v. Miller, 8 Tex. Civ. App. 241, 27 S. W. 905), the plaintiff was charged with contributory negligence in alighting from a moving train, and it was held that it was error to permit him to testify that he thought he could alight with safety; it was said in these decisions that the question was what would a reasonably prudent man have done under the circumstances, and what the plaintiff thought of the danger was not material. These authorities are not free from conflict I. & G. N. Ry. Co. v. Satterwhite, 19 Tex. Civ. App. 170, 47 S. W. 41. In any event we do not think the authorities are applicable here. In such cases the plaintiff was not exposed to danger, except as he exposed himself to danger in the very act charged against him as being negligent. Where one acts to save another from imminent peril brought about by the negligence of the defendant, the rule of ordinary care is not applied to his act, but he is only precluded from recovery if he act-

ed rashly under the circumstances. M., K. & T. Ry. Co. v. Goss, 31 Tex. Civ. App. 300, 72 S. W. 94; I. & G. N. Ry. Co. v. McVey, 81 S. W. 997; T. & N. O. Ry. Co. v. Scarborough, 104 S. W. 409. In such cases it seems to us that evidence which shows how the danger appeared to the person acting ought to be admissible on this issue. Besides in this particular case it would be hard for Mrs. Haywood, by a mere statement of the facts surrounding her, to portray the situation so that the jury might see it as it appeared to her at the time, and her opinion and conclusion would be admissible for such purpose. Railway Co. v. Gilcrease, 187 S. W. 715; Walker D. Hines v. W. M. Collins, 227 S. W. 332, recently decided by this court. The authorities last cited also sustain the admission of the statement of Mrs. Haywood that since the injury her mind is so confused that she is not able to instruct children and teach school, as she had been able to do before the injury.

[17, 18] The eighth and ninth assignments complain of the admission of evidence of tests made by several different persons, as to the distance a child might be seen on the track at the place in question. These tests, or some of them at least (and the assignments do not present them separately) were made under conditions similar to those existing at the time of the injury, with the exception that the parties making the tests were on foot on the track, the child used in the tests was slightly larger, and there is some conflict as to whether it was dressed in the same color of clothes, the difference, if any, being between dark blue and light blue. It seems to be the rule that an exact similarity in conditions is not absolutely essential to sustain the introduction of evidence as to the result of experiments; only a substantial similarity is required, and dissimilarity affects the weight rather than the admissibility of the evidence. The decision of the preliminary question as to whether the conditions are so substantially similar as to authorize the introduction of the evidence is necessarily for the trial court and he has considerable latitude of discretion in deciding it. G., C. & S. F. Ry. Co. v. Whitfield, 206 S. W. 380; H. & T. C. Ry. Co. v. Ramsey, 43 Tex. Civ. App. 603, 97 S. W. 1067; Clark v. State, 38 Tex. Cr. App. 30, 40 S. W. 992; C. J. vol. 22, pp. 758, 759, and authorities there cited. Tested by these rules, we do not think any reversible error is shown by these assignments.

[19, 20] The tenth assignment complains that the court permitted the plaintiff to testify:

"That he had lived in a box car, at the pump station, for about 18 months; that there was no inside toilet in the box car; that the box car was not fenced off from the railroad track; that it was dangerous to the children living in the box cars; that the children had no place to play, and that he had conversed with Mr. Farley, the superintendent of the railway company, about six months before the accident; that he advised Farley of the conditions, and that it was dangerous to the children, and that it took most of the time of himself and his wife to look after said children, and that Farley admitted that it was dangerous, and agreed to move the box cars about 100 feet west and fence them off from the right of way, so that it would not be dangerous to the children."

In connection with the introduction of this evidence the court instructed the jury:

"That said testimony would not be considered by the jury as any grounds upon which plaintiff might recover, but was admitted by the court for the purpose of showing that the railway company knew the situation and as to the premises that defendant was living on."

The propositions urged under these assignments do not question the fact that knowledge on the part of the defendants as to conditions which might require some greater degree of diligence in keeping a lookout at this particular portion of its track might be material on the question of negligence in this respect, but these propositions assert that "In law the defendants were presumed to know the location of its track, the kind and character of its buildings, and the proximity of the same to its railroad, and also that plaintiff was working for it and living in the house belonging to the company," and that evidence of such facts, coupled with evidence of the agreement on the part of the defendant's superintendent not made a basis of recovery by the pleading, was inflammatory and prejudicial. We think that part of the testimony which brought notice to the defendant's agents of the conditions at this place was admissible. M., K. & T. Ry. Co. v. Hammer, 34 Tex. Civ. App. 354, 78 S. W. 708; G., C. & S. F. Ry. Co. v. Smith, 87 Tex. 348, 28 S. W. 520. We doubt whether the testimony as to the agreement of the superintendent to move the box cars and build a fence around them was admissible. The evidence of the plaintiff as to his communication of the facts to the superintendent imparted the knowledge with which the plaintiff sought to charge the defendant, and the agreement itself added nothing to this knowledge. Evidence of such agreement and failure on the part of the defendant to comply with it was likely to be prejudicial, notwithstanding the limitation put upon its consideration by the court. However, the objection was made, not only to the agreement, but to other evidence, which was admissible as imparting knowledge, and since the appellant does not separate the inadmissible from the admissible, we cannot sustain the assignment. We overrule the eleventh assignment for the same reason.

[21] The proposition urged under the fifteenth and sixteenth assignments which are

grouped is not germane. However, there was no error in refusing the charge referred to in the fifteenth assignment. The court submitted an issue of contributory negligence, and gave defendants requested charge No. 6, which fully covered the law applicable to this phase of the case. The court's definition of proximate cause, criticized by the sixteenth assignment, is correct.

[22] The seventeenth assignment, complains of the refusal of the court to give a charge informing the jury that the plaintiff in accepting employment from the defendants assumed in law such reasonable dangers to himself and family as were incident thereto, etc. It is said by some of the authorities that the doctrine of assumed risk, which was sought by these requested charges to be applied to the facts of this case, applies only to personal risks to the servant growing out of the relation of master and servant. St. Louis & S. F. Ry. Co. v. Traweek, 84 Tex. 65, 19 S. W. 370, 374 (point not referred to in the syllabus); La. & T. Ry. Co. v. Brown, 50 Tex. Civ. App. 482, 109 S. W. 951, 952–954. However, there is good authority for the application of the doctrine, or one very similar to it, expressed in the maximum, "volenti non fit injuria," to situations other than those growing out of the relation of master and servant. Miner v. Connecticut River R. Co., 153 Mass. 398, 26 N. E. 994; notes to 3 L. R. A. (N. S.) 1097. However this may be the charge of the court on contributory negligence sufficiently defined the rights of the parties in this particular instance. As we have already stated, the court submitted an issue of contributory negligence on the part of the parents, and in this connection charged the jury that the care of the minor child was incumbent upon both the father and the mother, and they were bound to use such care as an ordinarily prudent person would use under the same or similar circumstances to prevent it from going upon the track or into a place of danger, and to use such protective care as the age of the child and danger to which it was exposed rendered reasonably necessary under the circumstances, and that if they failed to use such care they were guilty of contributory negligence. The plaintiff's case was based on a specific act of negligence, imposing a peril in addition to that which would have been an incident to the situation had the defendants been in the exercise of ordinary care. There could be no claim of any assumption of the risk incident to the act of negligence which became known to the plaintiff and his wife only at the very moment of the injury.

[23] The twenty-first assignment is multifarious. It complains that an issue of contributory negligence was submitted because it is asserted that the undisputed evidence showed the plaintiff and his wife to be guilty of contributory negligence, and the same assignment complains of the refusal of the court to submit special charge No. 5, which was a charge on the issue of discovered peril.

[24] The proposition under the twenty-second assignment is not germane. Paragraph B of special issue No. 4, referred to in the assignment, submits an issue as to whether the negligence of the defendant was the proximate cause of the death of the child. The assignment says that it was error to submit this issue, because the undisputed evidence in the case showed that the plaintiff and his wife were themselves guilty of contributory negligence, which was the proximate cause of the injury. The proposition under the assignment deals with an entirely different subject.

Numerous other assignments are presented, but those which have not been specially mentioned are sufficiently disposed of by the general conclusions, which we first announced.

The judgment as to the defendant railway company will be reversed, and the railway company dismissed, and judgment rendered only against the agent representing the government in such litigation.