**MARDIS v. HINES, Director General of Railroads, et al.**

(Circuit Court of Appeals, Eighth Circuit. August 23, 1920.)

No. 5484.

**Railroads ⬳5½, New, vol. 6A Key-No. Series—Carrier under federal control not suable for personal injuries.**

Under the Federal Control Acts (Act Aug. 29, 1916, and Act March 21, 1918, § 10), the President's proclamation of December 26, 1917, and the Director General's General Order No. 50 issued pursuant thereto, a passenger on a railroad operated by the Director General cannot maintain an action against the railroad company for injuries.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by Earle J. Mardis against Walker D. Hines, Director General of Railroads, and the Missouri Pacific Railroad Company, for damages for personal injuries. From a judgment for defendant railroad company, on sustaining demurrer to the petition against it (258 Fed. 945), plaintiff brings error. Affirmed.

Jeptha H. Evans and Charles I. Evans, both of Booneville, Ark., and Heartsill Ragon, of Clarksville, Ark., for plaintiff in error.

Edward J. White, of St. Louis, Mo., and Thomas B. Pryor, of Ft. Smith, Ark., for defendant in error Missouri Pac. R. Co.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

HOOK, Circuit Judge. Mardis, a passenger on the Missouri Pacific Railroad, was injured January 26, 1918, while it was in the possession of and being operated by the Director General of Railroads under the authority of the United States. He sued both the Director General and the railroad company. On a demurrer to the petition by the latter, the trial court held there was no cause of action against it. The question here is whether the ruling was correct.

The Act of Congress of August 29, 1916 (Comp. St. § 1974a), authorized the President in time of war to take possession and assume control of systems of transportation. War with Germany having occurred, the President issued his proclamation, dated December 26, 1917, taking over the transportation systems, including the Missouri Pacific Railroad, and placing them under the control of the Director General. The proclamation provided that, until the Director General otherwise directed, his duties should be performed through the officers and employés of the systems of transportation, who should continue operation in the usual way of common carriers in the names of their respective companies; also that until otherwise directed by the Director General the systems of transportation should remain subject to all existing statutes and orders of commissions, but that any order, general or special, thereafter made by the Director General, should have paramount authority and be obeyed as such.

As above noted the accident to Mardis occurred January 26, 1918. Afterwards Congress passed the Act of March 21, 1918, section 10 of which provides:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j.

On October 28, 1918, the Director General issued his General Order No. 50, which provided, among other things, that actions for death or personal injury arising after December 31, 1917, and growing out of the possession, use, control, or operation of any railroad by the Director General, which but for federal control might have been brought against the carrier company, should be brought against him, the Director General, and not otherwise. Finally this action was brought by Mardis January 21, 1919.

Although the officers and employés of the railroad company were being utilized by the Director General at the time of the collision, they were, in respect of everything that pertained to its causes and responsibilities, in his service, not in the service of the company. The negligence was his. Tested by familiar rules of law of general application, the railroad company would not be liable. It was not in possession or control of its railroad, and was not operating it, though for reasons of convenience its corporate name was being employed by the government. This being so, the contention that nevertheless the railroad company remained corporately liable for the negligent acts and omissions of the Director General, and inferentially as a consequence that its property not under federal control as necessary for transportation might be taken on execution to satisfy a judgment on such a demand, so involves considerations of fundamental rights that it would require most serious attention.

In Northern Pacific R. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897, the court held that under the act of 1916, the proclamation of the President, and the act of 1918, the possession and control of the railroads by the United States was complete and un-

divided; that the private ownership during the period provided was displaced. As regards the conditions of the case here, which arose before the act of 1918, we see no reason for saying less of the act of 1916 and the proclamation. We need not say however that the question of liability of the railroad company should be tested by the narrow rules of lessor and lessee of a railroad and their relations to the public, nor need we consider whether the government in the exercise of its power of eminent domain may not impose personal liability for the acts of its agents upon the owners of private property in its temporary possession under a statutory promise or engagement of reimbursement or reparation. The two acts of Congress and the proclamation furnish their own clear construction without resort to such considerations. The provisions in section 10 of the Act of 1918 which seem to support the claim of corporate liability are expressly made subject to the inconsistent orders of the President, and the like provisions of the proclamation of the President were only effective "until and except" so far as the Director General by "general or special orders" otherwise determined. The orders of the President controlled, and in the sense of the act of 1918 the orders of the Director General under the express authority of the proclamation were the orders of the President.

The power conferred upon the President was unlike that customarily given administrative officers to carry out the provisions of a statute. In such cases the observance of the express statutory limitations is obligatory and action under them must be in harmony. But there is evident in the act of 1918 an intent to confer a much broader power upon the President. The provision in section 10 that carriers while under federal control should be subject to all liabilities as common carriers arising under state, federal, or the common law was expressly subordinated to any inconsistent order of the President. The later provisions in the same section about the bringing and defense of actions are dependent upon the existence of a liability. They do not purport to create a cause of action not otherwise existing. The proclamation of the President under the act of 1916 was before Congress at the adoption of the act of 1918, and it was known that the President was exercising his powers through the Director General. As we have said, the orders of the Director General were in the sense of the act of 1918 the orders of the President. According to General Order No. 50 the action of Mardis should have been brought against the Director General alone. We have not thought it necessary to review the decisions on this subject. There is quite a conflict among them.

The judgment is affirmed.