**HINES, Director General of Railroads, et al. v. COLLINS. (No. 1709.)**

(Court of Civil Appeals of Texas. Amarillo. Dec. 1, 1920. Rehearing Denied Jan. 26, 1921.)

1. **Railroads ⬅⇒5½, New, vol. 6A Key-No. Series—Action for injury to employee during federal control, in effect against government, with no liability of company.**

Whether action for injury to railroad employee from operation of a car during government control should be in name against the company, under Federal Control Act, § 10 (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), or against the Director General under his General Orders Nos. 50 and 50a, action is in effect against the government, and there is no individual liability of the company.

2. **Railroads ⬅⇒5½, New, vol. 6A Key-No. Series—Nominal defendant in action for injury during federal control not important.**

It is not important whether the nominal defendant, in action for injury to railroad employee during federal control, was the company or the Director General; he being in court, and the litigation being conducted by the proper government representatives.

3. **Appeal and error ⬅⇒1152 — Judgment imposing individual liability on railroad during federal control can be modified.**

Judgment against railroad company and Director General for injury to employee during government control, so far as imposing individual liability on the company, can be modified on appeal.

4. **Railroads ⬅⇒5½, New, vol. 6A Key-No. Series—Agent to be substituted as defendant after termination of federal control.**

Under Act Cong. Feb. 28, 1920, § 206, subd. (d), notwithstanding sections 202, 211, action pending at termination of federal control for injury to railroad employee during federal control is thereafter to be prosecuted against the agent appointed by the President under such act for defending such actions.

5. **Constitutional law ⬅⇒106 — No deprivation of vested right by statute providing for substitution of different agent as nominal defendant.**

Plaintiff, in an action for injury to a railroad employee during federal control, pending at termination of federal control, is not deprived of a vested right by Act Cong. Feb. 28, 1920, § 206, subd. (a), providing for substitution of different agent as defendant to represent the government; this relating merely to the remedy.

6. **Railroads ⬅⇒5½, New, vol. 6A Key-No. Series—Formal substitution of agent as defendant to be made in action pending at termination of federal control.**

Though the President under Act Cong. Feb. 28, 1920, § 206, appoints the Director General as agent against whom action may be brought or prosecuted after termination of federal con-

---

⬅⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

trol, there should be a formal substitution of him in his capacity as agent in an action pending at termination of federal control, in the absence of voluntary appearance by his duly constituted agents acting for him in his new capacity.

**7. Witnesses ⊕═237(4)—Questions held not to assume facts.**

Questions to witness *held* not to have assumed that tools on a car fell off, causing its derailment, a matter in dispute.

**8. Evidence ⊕═483(1)—One need not see fall of tools from car to testify to construction that would prevent it.**

A witness, though he did not see the fall of tools from a car claimed to have caused its derailment, could testify how the car could have been built to prevent tools carried thereon from falling.

**9. Appeal and error ⊕═1048(7)—Exclusion of impeaching testimony harmless, in view of other like testimony.**

Exclusion of testimony admissible by way of impeachment is not reversible error; other testimony to substantially the same effect having been admitted.

**10. Evidence ⊕═470 — Generally nonexperts may not give opinions.**

As a general rule, opinions and conclusions of nonexpert witnesses are not admissible; but they should state the facts, and the conclusions to be drawn therefrom should be left to the jury.

**11. Evidence ⊕═470 — Nonexpert may give opinion and conclusion, where situation cannot be made plain to jury.**

An exception to the rule against nonexperts giving their opinions or conclusions is where the situation cannot be made palpable to the jury by a mere statement of the facts.

**12. Evidence ⊕═471(24) — Statement of nonexpert held a conclusion and opinion, inadmissible.**

Even if statement of nonexpert that he knew of nothing else that could have caused the derailment except the tools falling in front of the car may be considered a statement of fact and admissible, his further statement, that this was the only thing that he could figure out that did it, was clearly a conclusion and opinion, and inadmissible.

**13. Evidence ⊕═555—Roadmaster's conclusion of cause of accident cannot be shown.**

The roadmaster's opinion or conclusion as to the cause of derailment of a car, drawn from an examination subsequent to the accident, and favorable to one injured thereby, was not binding on the operator of the road, and so could not be shown in an action for the injury.

**14. Evidence ⊕═314(2) — Statement of what another's opinion was, hearsay.**

Even if a roadmaster's opinion as to what caused a derailment of a car were admissible, to allow another to testify to what that opinion was would be hearsay.

**15. Appeal and error ⊕═1050(1) — Admission against railroad operator of roadmaster's opinion of cause of derailment prejudicial.**

Improper admission against the operator of a railroad of the roadmaster's opinion of what caused a car's derailment cannot be said to be harmless, where there was conflicting testimony.

**16. Negligence ⊕═141(12)—Charge on diminution of damages for contributory negligence, unobjectionable.**

A charge, practically in the language of the statute, as to diminution of plaintiff's damages if he be found guilty of contributory negligence, *held* unobjectionable.

**17. Master and servant ⊕═217(7)—Employee not under duty to discover danger from master's negligence.**

A charge on assumed risk, which imposes on the employee the duty of exercising ordinary care to discover danger due to the master's negligence, is improper.

Appeal from District Court, Floyd County; R. C. Joiner, Judge.

Action by W. M. Collins against Walker D. Hines, Director General of Railroads, and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellants.

Kinder, Russell & Griffin, of Plainview, and Barrett, Childers & Deatherage, of Amarillo, for appellee.

BOYCE, J. W. M. Collins, appellee, brought this suit against the Panhandle & Santa Fé Railroad Company, to recover damages for personal injuries sustained by him. It was alleged and proven that the plaintiff was injured by the derailment of a motorcar, on which he and other laborers were riding while in the discharge of their duties, as section hands, working on defendant's road. It was alleged that the tools for use by the men in such work were carried in the bed of said motorcar; that no end gate, which might prevent the tools from falling out of the car, was furnished; that on account of this fact, some of the tools fell out in front of the car and derailed it. The negligence charged was the failure of the defendant to furnish end gates for the car, and the operation thereof at a dangerous rate of speed. The injury occurred in November, 1918, while the road was being operated by the United States government. The railroad company appeared and pleaded in abatement that under the provisions of Orders 50 and 50a of the Director General of Railroads, the suit could be brought only against the said Director General, and that said Director General should be made defendant and the railway company dismissed. The court refused

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to dismiss the suit as to the railway company, but required that the Director General of Railroads be made a party defendant, and the case was continued for the term, with the agreement that the attorneys representing the railroad company would appear for the said Director General at the succeeding term of the court. Said succeeding term of the court began on March 1, 1920. By the terms of the act of February 28, 1920 (41 Stat. 456), federal control of the railroads ended at 12:01 a. m. of that date, and on March 15, 1920, on call of the case for trial, the defendants filed another plea, in which they contended that under the provisions of subdivisions (a) and (d) of section 206 of said act (41 Stat. 461) the suit could only proceed against the agent who might be appointed by the President to conduct litigation arising out of the operation of the railroads by the government, and that said agent should be substituted as the sole defendant in said suit. This plea was overruled, and the case proceeded to trial, resulting in a joint judgment against Walker D. Hines, Director General of Railroads, and the Railroad Company. Such further statement of the pleading and facts will be made as is necessary in the consideration of the assignments as we shall discuss them.

[1-3] The assignments present two questions as to the effect which the fact of federal control of the railroads and the termination thereof, as applied to the facts of the case, may have on the rights of the parties. These are: First, whether there was any cause of action against the railroad company in its corporate capacity; second, whether upon termination of federal control it was necessary to substitute the agent provided for by the act to conduct such litigation and whether service of process upon him or his authorized agents was necessary to effect a substitution. The President, in time of war, took charge of the railroads of this country, under authority of the act of August 29, 1916, par. 1974a, U. S. Compiled Statutes, which in the most general terms empowered the President to take possession and assume control of any system or systems of railroads in such emergency. Congress, by act of March 21, 1918 (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) defined more fully the rights and liabilities of all parties growing out of the situation created by the exercise of this power by the President. By the terms of section 10 of this act (section 3115¾j, U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919) it was provided: That such carriers while under federal control should be subject to all laws and liabilities as common carriers, etc., except in so far as such liability might be inconsistent with the provisions of said act or any other act applicable to such federal control, or with any order of the President; that suits might be brought by and against such carriers, and judgment rendered in the same manner as before federal control, and that no defense should be made to such suits upon the ground that the carrier was an agent of the federal government. It was expressly provided, however, that "no process, mesne or final, shall be levied against any property under such federal control." In October, 1918, the Director General issued what is known as General Order No. 50, later amended by General Order No. 50a, which provided that suits based on causes of action growing out of control or operation by the Director General should be brought against the Director General, and not otherwise. The validity of this order has been upheld by some courts, while others have held it to be in conflict with the provisions of the act of Congress, just referred to. We do not think it important to determine in this particular instance whether the suit should, prior to the termination of federal control, have proceeded in the name of the carrier, or the Director General, as defendant. In either case, the suit was in effect against the government, and there was no personal liability against the carrier. In our opinion, Congress did not intend by the language used in section 3115¾j, U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, above referred to, to impose personal liability on the carrier for causes of action growing out of the acts of the government in its operation of the roads. Some courts have expressed the opinion that if such were the intention of the act it would, in this respect, be unconstitutional. The government, in its operation of the railroads, retained the names of the respective carriers owning them before the government control, and operated them in such names. The provisions for liability and suit to enforce same were merely intended to create the same liability against the government in its operation of the railroads as would have existed were the roads being operated by the carrier, and to permit suit to be brought in effect against the government in the name of the carriers in which it was carrying on the business. As we have seen, it was expressly provided that no process should be levied against the property under federal control. The act provided that the receipts of the operation of the roads would be the property of the United States, but should not be covered into the Treasury, and that disbursements thereof should be made in the same manner as before federal control. Section 3115¾l U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919. It was evidently the intent of Congress that claims growing out of the operations of the railroads by the government should be paid out of these receipts, and the revolving fund created by section 6 of the act. Section 3115¾f, U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919. In the act of February 28, 1920, par. (g), par. 206, it was expressly provided that—

"No execution or process, other than on a judgment recovered by the United States

against a carrier, shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under federal control."

While, of course, if there had been a liability against the carrier created by the act of March 21, 1918, Congress would have had no power to thus destroy such liability, yet it is the duty of the courts to so construe the legislation if that is possible, as to uphold its validity. We think it appears from the whole scheme of legislation on the subject that there was no intention to impose on the carrier any liability for the acts of the government while operating the property. This conclusion is supported by numerous authorities. H. & T. C. Ry. Co. v. Long, 219 S. W. 215; G., H. & S. A. Ry. Co. v. Wurzbach, 219 S. W. 252; Baker v. Bell, 219 S. W. 247; T. & N. O. Ry. Co. v. Clevenger, 223 S. W. 1036; H. E. & W. T. Ry. Co. v. Wilkerson, 224 S. W. 574; Hines v. Dahn (C. C. A.) 267 Fed. 105; Mardis v. Hines (C. C. A.) 267 Fed. 171; Cravens v. Hines (Mo. App.) 218 S. W. 912; Groves v. Grand Trunk Western Ry., 210 Mich. 409, 178 N. W. 232; Schumacher v. Pennsylvania R. Co., 106 Misc. Rep. 564, 175 N. Y. Supp. 84. Numerous other authorities to the same effect are referred to in the authorities cited, as well as authorities holding to the contrary, such as Missouri Pacific Ry. Co. v. Ault, 140 Ark. 572, 216 S. W. 3, and others. The judgment, in our opinion, in so far as it acted on the defendant carrier, in any individual capacity, and authorized the issuance of any process against its property, is wrong. But as the Director General was in court and the litigation, up to the termination of federal control, was being conducted by the proper representatives of the government, it was not important whether the nominal defendant should be the carrier or the Director General, and unless the question is to be affected by the termination of federal control the judgment of the district court could be here modified, if there were no error requiring its reversal, so as to make it clear that it is enforceable only out of the fund provided by Congress for the payment of such judgments. So that we are brought to the consideration of the second question, that arising out of the termination of the federal control.

Subdivision (a), § 206, of the act of February 28, 1920, provides that suits based on causes of action arising out of the possession, use, or operation by the President of the railroads of such character as prior to federal control could have been brought against such carrier, might "after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act." Subdivision (b) of said section 206 provided, in reference to service of process in such cases, that process might be served upon the proper agent of the carrier operating the railroad, if a contract had been made with such carrier by or through the President for the conduct of litigation arising out of the operation during federal control, and that, if no such contract had been made, then process might be served upon such agents or officers as might be designated by or through the President, it being further provided that the agent appointed to conduct litigation should cause to be filed upon the termination of federal control in the office of the clerk of each district court in the United States a statement, naming the carriers with whom he had contracted for the conduct of such litigation, and designating the agents or officers upon whom service might be had in suits arising out of the operation of those roads with which no such contract had been made. Subdivision (d) of this section of the act is as follows:

"Actions, suits, proceedings, and reparation claims, of the character above described pending at the termination of federal control shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President under subdivision (a)."

Subdivision (e) of said section 206 provided that judgments rendered in such cases against the agent designated by the President under subdivision (a) should be promptly paid out of the revolving fund created by section 210 of the same act. Subdivision (e) of section 210, referred to, appropriated the sum of $300,000,000 for use as a revolving fund for the purpose of making certain loans and "paying the judgments, decrees and awards referred to in subdivision (e) of section 206." Section 202 of the said act provided that:

"The President shall, as soon as practicable after the termination of federal control, adjust, settle, liquidate, and wind up all matters, including compensation, and all questions and disputes of whatsoever nature, arising out of or incident to federal control"

—and for such purposes, and for the purpose of making certain other payments, created a specific fund out of certain moneys referred to in said subdivision. Section 211 of this act is as follows:

"All powers and duties conferred or imposed upon the President by the preceding sections of this act, except the designation of the agent under section 206, may be executed by him through such agency or agencies as he may determine."

The President on the 28th day of February, 1920, by proclamation, appointed Walker D. Hines, Director General of Railroads, as agent, "to exercise and perform all and singular the powers and duties conferred and imposed upon me by provisions of said act of

February 28, 1920, except the designation of the agent under section 206 thereof, and continuing in him and his successors in office all powers and authority heretofore delegated under 'the Federal Control Act, approved March 21, 1918, except as such powers and authority have been limited in the said act of February 28, 1920." By proclamation of March 11, 1920, the President appointed "Walker D. Hines, Director General of Railroads and his successor in office, as the agent provided in section 206 of said act, approved February 28, 1920."

[4-6] We have found but two cases which construe the foregoing provisions of the act terminating federal control. These are Goldstein v. Hines (Sup.) 183 N. Y. Supp. 518, and Keene v. Hines, 111 Misc. Rep. 398, 183 N. Y. Supp. 520. The two cases are somewhat in conflict. In the first case, it being an action arising out of the operation of the railroads by the President, brought against the Director General prior to the termination of federal control, and called for trial on March 10, 1918, it was held that the authority of the Director General to conduct such litigation ended on March 1, 1918; that "the attorneys and other agents designated by him to conduct litigation in causes of action arising out of federal control are no longer under his supervision or direction," and that the authority, power, and duty of the Director General and the attorneys acting for him, prior to the termination of control, were suspended upon the taking effect of the act. It was ordered in said case that the prosecution of the case be suspended until the designation by the President of an agent for the purpose of conducting such litigation, and that when such agent should be appointed "he be substituted in the action in conformity with the practice customary in substitution of receivers and other representatives of parties against whom an action is deemed to have abated when the same may be revived by provision of law." In the second case it was held that it was contemplated under the general authority of the provision of section 202, which we have referred to above, that suits might continue against the titular defendant, against whom they had been theretofore brought, and upon the issuance of the proclamation of February 28th there was no suspension of the authority of the Director General to continue to represent the government in these pending cases. We are inclined to the opinion that it was the intention of the legislation that these suits should be prosecuted further only under the provisions of section 206 of the act. It must be remembered that the government can be sued only by its permission. So that the language authorizing the suit is naturally permissive. If in granting the privilege a particular method of proceeding is provided this would be exclusive. Commonwealth Bonding

& Casualty Ins. Co. v. Bowles, 192 S. W. 612. It is the rule that general provisions are controlled and limited by more specific provisions in reference to the same subject. Section 202, in which the more general language concerning the settlement and adjustment of questions or disputes arising out of federal control was used, is in a setting of provisions dealing with other kinds of claims, and provides a separate fund for their payment. Section 206 deals specifically with the subject of litigation of this character, and provides a different fund for the payment of the judgments that might be rendered in such cases. A provision for the substitution of another agent who should represent the government in the conduct of such litigation, already instituted, would not be unconstitutional, as depriving the litigant of a vested right, as this relates merely to the remedy, and does not affect the right itself. Ettor v. City of Tacoma, 228 U. S. 148, 33 Sup. Ct. 428, 57 L. Ed. 773. Even if the President might have granted authority to the agents named by him, in pursuance to the general authority conferred by sections 202 and 211 to conduct this litigation, yet it does not appear that the President and his agents, appointed in pursuance thereto, have acted under this authority. On the contrary, the President has named an agent under section 206, and the agents and attorneys who had theretofore been conducting the litigation under other authority granted before the act of February 28, 1920, are in effect denying their authority to further act for the government in this litigation. In this respect this case might be distinguished from that of the case of Keene v. Hines, supra.

The further question then arises as to whether, since the titular defendant would be the same, before and after the substitution, it would be necessary to go through the form of substitution, including the service of process on such defendant. We confess that we have not arrived at a conclusion as to this question entirely satisfactory to ourselves. On the one hand, it appears reasonable to conclude that it was probably the purpose of the President in appointing said Walker D. Hines, as agent to conduct such litigation, to provide for the continuance of the suits then pending without a break, it being perhaps contemplated that the said agent would use the same agencies as he had theretofore employed in the defense of such litigation and proceed with the same without delay. On the other hand, a substitution of parties ordinarily requires a service of process on the party substituted in case he does not voluntarily appear. White v. Johnson, 50 Am. St. Rep. 741. It is also true that where the same person is sued in a different capacity service upon him in his new capacity is required before the suit may proceed. Henderson v. Kissam, 8 Tex. 46; Enc. of

Pleading & Practice, vol. 20, p. 967. We may assume that the Director General had no personal knowledge as to the many suits that were pending at the time of the termination of federal control, and that upon his appointment as agent to conduct this litigation he could have employed different agents than those who had been theretofore representing him in his other capacity; and it may be that, in the absence of the voluntary appearance by his duly constituted agents acting for him in his new capacity, he had the right to rely upon formal substitution being made and service had in the regular way upon such agents as he might appoint to represent him, in accordance with the provisions of section 206 of the act. We reverse the case on other grounds, but suggest that it would be the safest policy, under the circumstances, to require a formal substitution of the present agent representing the government in the conduct of this litigation.

[7, 8] Several assignments complain of the method of examination of the witness R. E. Barner, one of the men riding on the car at the time of the derailment; it being asserted that the interrogatories were propounded and the answers made on the assumption that the tools carried in the car fell out in front of the car and caused it to derail. In connection with the consideration of this and other assignments we make the following additional statement: The tools consisting of a lining bar, shovels, wrenches, etc., were carried in the bed of the car, and there was no end gate furnished, so that there was nothing to prevent them from slipping out and falling in front of the car. The motorcar was derailed but never left the track entirely, running from 15 to 60 feet, as different witnesses vary the distance, after leaving the rails, before coming to a stop. The plaintiff and some of the other men were thrown from the car, and the tools were spilled out and were found lying near the car. The circumstances were sufficient to warrant the conclusion that the lining bar, when it fell, was caught with one end between the ties and the other end against the front end of the car; but the facts are sufficient to have warranted the jury in finding, either that some of the tools first fell off and caused the derailment, or that the falling of the tools was the result, and not the cause, of the derailment. The bills of exception referred to in these assignments do not sustain the objections made. One question was as to whether the witness looked to see what caused the tools to fall, and the answer was that he did not understand why they fell off the car. Another question was as to whether the witness saw any difference in the condition of the car from what it was before the derailment, to which the witness answered:

227 S.W.—22

"Nothing only the hole in the front end made by the bar."

The statement contained in the last four words of this answer may have been objectionable as a conclusion, but that is not the objection made by the assignment. The other interrogatory referred to in these assignments was:

"What was it that could have been done that was not done with either the car or tools that would have kept them from falling on this occasion?"

If the circumstances were such as would warrant the conclusion that the tools fell in front of the car and caused the derailment, though this witness may not have seen them fall, yet under such state of facts he would have been permitted to show how the car could have been built so as to prevent tools carried therein from falling.

[9] The testimony referred to in the sixth assignment was admissible by way of impeachment: but, as testimony to substantially the same effect was admitted, we do not think there would be reversible error in the rejection of this particular interrogatory and its answer. G., H. & S. A. Ry. Co. v. Jackson, 53 S. W. 81; Id., 93 Tex. 262, 54 S. W. 1023.

[10-15] A number of assignments are grouped under the seventh assignment, under which it is claimed that there was error in permitting the witnesses, R. E. Barner, and N. A. Mixon, to testify that they knew of nothing else that could have caused the derailment except the tools falling in front of the car, and the witness Barner was permitted, in one instance, to testify that this was "the only thing I could figure out that done it." The objection made is that the testimony was the conclusion and opinion of the witnesses, etc. As a general rule, the opinions and conclusions of nonexpert witnesses are not admissible. Such witnesses should state the facts, and the conclusions to be drawn therefrom should be left to the jury. An exception to the general rule exists in those cases where the situation cannot be made palpable to the jury by a mere statement of the facts. Mo. Pac. Ry. Co. v. Jarrard, 65 Tex. 566; Turner v. Strange, 56 Tex. 142; McCabe v. San Antonio Traction Co., 39 Tex. Civ. App. 614, 88 S. W. 388; Shelley v. City of Austin, 74 Tex. 608, 12 S. W. 755; Houston City Street Ry. Co. v. Sciacca, 80 Tex. 350, 16 S. W. 32. There was nothing in the circumstances of this case that prevented an accurate presentation of the situation from a statement of the facts which the witnesses experienced and saw upon examination after the occurrence. So there is no reason for applying the exception to the rule here. The statement by the witnesses that they did not know of anything that could have caused the accident except the lining

bar or other tools falling in front of the car is at least on the border line of the inadmissible under this rule. It was held in the case of Arey v. St. Louis Southwestern Ry. Co., 170 S. W. 802, that somewhat similar testimony was a statement of fact and admissible. It may be that a distinction might be drawn between that case and this one. This statement, as made by the witnesses, in a roundabout way, conveyed the opinion of the witness, and in this particular case the facts themselves could have been developed by a different method of interrogation. But in view of the decision of the case above referred to, we are not prepared to say that there was error in the admission of this particular statement. The other statement, made by the witness Barner, that this was the "only thing that he could figure out that done it," was clearly a statement of a conclusion and opinion, and was inadmissible. In this same connection, and just before the witness was permitted to state this conclusion, this witness was permitted to testify that on the day after the accident, he and one Wallin, the roadmaster of the defendant company, went to the scene of the derailment, and agreed as to what caused the derailment. The witness was first permitted by the court to further testify that he and the roadmaster "agreed that it was the lining bar that put us off." The defendant then moved that this answer be excluded, and the court stated that he would sustain the objection "without further testimony as to what he found." The witness then detailed what he and the roadmaster found, and then was permitted to state his own conclusion, which we have quoted.

The roadmaster's opinion or conclusion as to the cause of the derailment, made from an examination of the facts afterwards, was not binding in any way on the defendant and was not admissible. Even if it were admissible, such opinion could not be reproduced by hearsay testimony. Ft. Worth & Denver City Railway Co. v. Thompson, 75 Tex. 501, 12 S. W. 744; P. & N. T. Ry. Co. v. Amarillo Street Railway Co., 171 S. W. 1106. When the witness was permitted to give his own conclusion as to the cause of the derailment, and in the same connection permitted to testify that he and the roadmaster agreed as to the cause of the derailment, the result of the evidence was a reproduction of the roadmaster's conclusion and opinion. We cannot say that the admission of these opinions was harmless. Evidence as to the opinion of the defendant's roadmaster was particularly calculated to influence the finding of the jury on this issue. Plaintiff's attorney, an experienced trial lawyer, must have thought so, else he would not have insisted, over repeated objections, in getting such evidence before the jury. He cannot now say with very good grace that it was not calculated to have any effect upon the jury.

[16] The charge as to the diminution of plaintiff's damages in the event he should be found guilty of contributory negligence is not subject to the objection urged by the eighth assignment. This part of the charge is in practically the language of the statute and the case of Norfolk & W. Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172, instead of supporting appellant's criticism of the charge, is to the contrary.

[17] The ninth, tenth, eleventh, twelfth and thirteenth assignments complain of the court's charge on assumed risk, and the refusal of the court to give certain special instructions on this issue. The charge given is not incorrect. It is general, and the defendant would have been entitled to more specific instructions if it had presented correct instructions, but all the charges requested were incorrect, in that they imposed on the plaintiff the duty of exercising ordinary care to discover the danger due to the negligence of the master. C., O. & G. Ry. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 100; P. & S. F. Ry. Co. v. Brooks, 199 S. W. 669, 670.

We think the evidence was sufficient to go to the jury on the issue of negligence, and overrule appellant's contention as to the insufficiency of the evidence presented under the fourteenth assignment.

Complaint is made by the fifteenth assignment that the verdict of the jury is excessive. We are of the opinion that it is. We have found no case where damages in the amount allowed in this case for any similar injury under similar circumstances has been upheld, and many cases are reported where such awards have been held excessive. See opinion on rehearing in Baker v. Bell, 219 S. W. 249 et seq. In view of the fact that the case is reversed for other reasons, we need not discuss the evidence on this issue, or make a definite statement as to what award of damages we would be willing to approve.

Reversed and remanded.