## PULLMAN CO. v. SWEENEY (two cases).

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

Nos. 88, 89.

**Railroads ☞5½, New, vol. 6A Key-No. Series—Pullman Company not liable for personal injury occurring during federal control.**

Under Act Aug. 29, 1916 (Comp. St. § 1974a), empowering President to take possession of transportation systems, presidential proclamation of December 26, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1974a), exercising such power and providing that carriers might be sued, except as Director General might otherwise determine, and Director General's Order No. 50, directing suits be brought against him, a sleeping car company is not liable for a personal injury occurring during federal control, since Federal Control Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), authorizing suits against carriers, expressly provides that it should not apply when inconsistent with other acts or presidential orders.

In Error to the District Court of the United States for the Western District of New York.

Separate actions by Christopher Sweeney and by Anna Sweeney against the Pullman Company to recover damages for personal injuries, loss of services, and medical and other expenses. Judgment for each plaintiff. Defendant brings error. Reversed.

Locke, Babcock, Spratt & Hollister and Herbert W. Huntington, all of Buffalo, N. Y. (Raymond C. Vaughan, of Buffalo, N. Y., of counsel), for plaintiff in error.

John J. Brown, of Buffalo, N. Y. (E. Deane Vincent, of Troy, N. Y., of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. While on a journey from Buffalo to Chicago, Mrs. Anna Sweeney occupied an upper berth on a train leaving the New York Central Station at Buffalo. In the morning, when she wished to rise, she rang the bell for the porter's assistance. When he came to her, she stated to him that she wished to get down, and he brought a ladder to accommodate her. She attempted to get down, and had one foot upon the top of the ladder, when the attention of the porter became diverted by a call from another porter. He turned around quickly and took the ladder with him, and Mrs. Sweeney fell to the floor below, receiving injuries for which she brought this action. Her husband sued for loss of services and medical and other expenses incurred in endeavoring to effect her cure. The action was instituted

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

against the Pullman Company, and the trial judge submitted the issues of fact as to the happening of the accident to the jury.

At the outset of the trial, a motion was made on behalf of the plaintiff in error to dismiss the complaint, upon the ground that the Pullman lines were taken over by the government pursuant to the President's proclamation of December 26, 1917, and were held and operated by the Director General of Railroads under the Federal Control Act of March 21, 1918, and that the actions could only be maintained against the Director General. The trial judge offered the plaintiff in error's attorney an opportunity to amend, so as to substitute the Director General of Railroads as party defendant in place of the plaintiff in error. This counsel declined to do, declaring that his instructions in these particular cases were to move to dismiss the actions on the opening, on the ground that the proper party was not served. The motion to dismiss was denied, and exception allowed, and the trials proceeded against the plaintiff in error, resulting in a verdict in each action in favor of the defendant in error.

The sole question presented to us is the question of law as to the proper party defendant. By the Act of August 29, 1916 (chapter 418, 39 Stat. 645; Comp. Stat. § 1974a), it is provided:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Pursuant to this authority on December 26, 1917, a proclamation was issued as follows:

"Now, therefore, I, Woodrow Wilson, President of the United States, under and by virtue of the powers vested in me by the foregoing resolutions and statute, and by virtue of all other powers thereto me enabling, do hereby, through Newton D. Baker, Secretary of War, take possession and assume control at 12 o'clock noon on the twenty-eighth day of December, 1917, of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States and consisting of railroads, and owned or controlled systems of coastwise and inland transportation, engaged in general transportation, whether operated by steam or by electric power, including also terminals, terminal companies and terminal associations, sleeping and parlor cars, private cars and private car lines, elevators, warehouses, telegraph and telephone lines and all other equipment and appurtenances commonly used upon or operated as a part of such rail or combined rail and water systems of transportation, to the end that such systems of transportation be utilized for the transfer and transportation of troops, war material and equipment, to the exclusion so far as may be necessary of all other traffic thereon, and that so far as such exclusive use be not necessary or desirable, such systems of transportation be operated and utilized in the performance of such other services as the national interest may require and of the usual and ordinary business and duties of common carriers.

"It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. * * * Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; *but suits may*

*be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine.*" Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1974a.

Later, and on March 21, 1918, the Federal Control Act (chapter 25, 40 Stat. 451; Comp. Stat. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) was enacted. Section 10 of said act provides as follows:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such federal control."

Pursuant to the authority conferred upon the Director General under the proclamation of December 26, 1917, namely, "but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine," General Order No. 50 was issued on October 28, 1918. This directed that actions at law, suits in equity, and other proceedings thereafter brought in any court based on claim for death or injury to person or loss of damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General, which action, suit, or proceeding, but for federal control, might have been brought against the carrier direct, shall be brought against the Director General and not otherwise. It will be observed that section 10 of the Act of March 21, 1918, supra, permitted actions at law or suits in equity to be brought by or against the carriers and judgment rendered as provided by law, and that no defense shall be made thereto on the ground that the carrier is the instrumentality or agency of the federal government.

Many of the trial judges have rested corporate liability on this provision. The provision in section 10 that carriers, while under federal control, should be subject to all liabilities as common carriers arising under state, federal or the common law, was expressly subordinated to any inconsistent order of the President. The language above quoted, "except so far as said Director may by general or specific orders otherwise determine," indicates this. The provisions in the same section (section 10) about the bringing and defense of actions are dependent upon the existence of a liability. The action of the Director General, in issuing Order No. 50, was the action of the President, and the

President was exercising his powers through the Director General. We think Congress clearly permitted the President to issue an order which was inconsistent with the liability which it is claimed by the defendant in error is imposed solely against the carrier because of the language in section 10. The defendant in error's injuries occurred on December 26, 1918, after the effective date of Order No. 50. The language of the Chief Justice in Northern Pac. Ry. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897, is pertinent. After referring to the proclamation of the President and the appointment of the Director General and the authority, he says:

"The proclamation in concluding declared that 'from and after 12 o'clock on said 28th day of December, 1917, all transportation systems included in this order and proclamation shall conclusively be deemed within the possession and control of said Director without further act or notice.' Carrying out the authority exerted by the proclamation, the railroads passed into the possession, control, and operation of the Director General." 250 U. S. 144, 39 Sup. Ct. 503, 63 L. Ed. 897.

The court held further:

"That no divided, but a complete, possession and control were given the United States for all purposes as to the railroads in question. But if it be conceded that, despite the absolute clarity of the provisions concerning the control given the United States and the all-embracing scope of that control, there is room for some doubt, the consideration of the general context completely dispels hesitancy. How can any other conclusion be reached, if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came, and all the other duties and exactions which the act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing?"

In Krichman v. United States, 263 Fed. 538, this court, in speaking of the control and operation of the railroads, said:

"Therefore all persons assisting him [Director General] in the operation of the roads, whether officers or mere employés, including the men who handled the baggage, were in so doing persons acting for and on behalf of the United States in an official function."

The Circuit Court of Appeals for the Eighth Circuit has reached the conclusion which is here announced (Hines v. Dahn, 267 Fed. 105; Mardis v. Hines [C. C. A.] 267 Fed. 171), as has the Sixth Circuit (Erie R. R. v. Caldwell, 264 Fed. 947).

We think that authority may be found in the congressional act, authorizing the Director General to issue Order No. 50 and thus requiring that actions arising during federal control must be brought against the Director General and not against the carrier corporation. We conclude that the plaintiff in error could not be held liable for negligence because of the acts referred to, resulting in injury, since it was operated by government agents over which it had no control.

Judgments reversed.