No. 23,032.

THE STATE OF KANSAS, *Appellee,* v. HARRY KELTER, *Appellant.*

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Receiving Stolen Property—Allegation of Ownership, as Bailee, in Railroad Company—Railroad in Control of United States Government.* The information in a prosecution for receiving stolen property alleged that the goods involved were "of the goods and chattels of the Chicago, Rock Island and Pacific Railway Company, a corporation, bailee, said Chicago, Rock Island and Pacific Railway Company, being then and there under the control of the United States government." *Held,* that there was no substantial variance between the allegation and the proof, and that possession was properly laid in the railroad company. (*Brackville v. Telephone Co.,* 107 Kan. 130, 132, 190 Pac. 773.)

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed March 12, 1921. Affirmed.

*J. H. Brady,* of Kansas City, for the appellant.

*Richard J. Hopkins,* attorney-general, *E. A. Enright,* county attorney, and *Justus N. Baird,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant was convicted of receiving stolen property. He appeals and assigns as error the overruling of his plea in abatement, his demurrer to the information, his motion to discharge and his motion for a new trial. In his brief, however, he states that the matter is presented upon a single error—the absolute failure to prove that the property alleged to have been stolen was the property of the Chicago, Rock Island & Pacific Railway Company, bailee, and the absolute and positive proof to the contrary. This point only, therefore, need be considered.

The information charged that the defendant received one case of ladies' shoes valued at $150 and one case of boys' shoes valued at $100, "of the goods and chattels of the Chicago, Rock Island and Pacific Railway Company, a corporation, bailee,

said Chicago, Rock Island and Pacific Railway Company, being then and there under the control of the United States government." The offense is alleged to have been committed on or about the 21st day of March, 1919. There was testimony that the Brown Shoe Company of St. Louis shipped an order of shoes to some firm in Oklahoma, including the two cases described in the information, and the receiving clerk of the St. Louis station identified the shipping order of such merchandise which contained these words:

"United States Railroad Administration, W. G. McAdoo, Director General of Railroads. . . . The above is to be regarded as substituted for the name of the C. R. I. & P. C. B. & Q. Wabash Railway Company—Railroad Company where the same appears in this document. . . .

"Rubber Stamp Signature:

"Received C. R. I. & P. R. R. St. Louis, Mo., Broadway Station, March 18, 1919. Receipt for property only. Not for prepay or advance charges. M. H. Rudolph, Per . . . Agent. (3 o'clock.)".

The agent testified that he put the rubber stamp on the goods on March 18, 1919. The bill clerk at St. Louis identified the waybill introduced by the state which recited:

"United States Railroad Administration, W. G. McAdoo, Director General of Railroads. Chicago, Rock Island & Pacific Freight Waybill . . . Kansas City, A. T. & S. F. to Crescent, Oklahoma. Consignee and address, Wm. Brown & Company."

The freight agent of the Santa Fe at Crescent, Okla., identified the freight receipt dated March 27, 1919:

"Consignee, Wm. Brown & Co., route C. R. I. & P. Kansas City, A. T. & S. F."

The president's proclamation directed that "until and except so far as" otherwise provided the various systems of transportation should continue in the usual and ordinary course of business in the names of their respective companies. The proclamation stated that the president had at noon on December 28, 1917, assumed control of each and every system of transportation in the United States, engaged in general transportation and that such control, operation and utilization should be exercised by the director-general through the boards of directors, receivers, and employees of such systems of transportation.

The act of congress of March 21, 1918, provided among other things:

"Carriers while under Federal control shall be subject to all laws and liabilities as common carriers, . . . except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control, or with any order of the President."

General order No. 1 issued by the director-general instructed that until further notice—

"All officers, agents and employees of such transportation systems may continue in the performance of their present regular duties, reporting to the same offices as heretofore and on the same terms of employment."

Lester Wheeler testified that he with one Sam Shively broke into a Chicago, Rock Island & Pacific Railway Company car in Kansas City, Kan., and took therefrom two cases of shoes and sold them to the defendant, and received $25 for his share. The statute, proclamation and general order, while evidencing superior control and direction of the operation of the Rock Island Railway did not destroy its identity or cause a cessation of its actual handling of freight, and when these two cases of shoes were received and transported by it from St. Louis to Kansas City it was in the possession of such shoes as bailee, and the proof did not fail to sustain this charge.

True, the government was controlling and operating the railroads, but it was doing so through the railroads' employees in substantially the usual way, and in a literal if not in the ultimate legal sense the railroad was in possession of these goods. Counsel refers us to *Mardis v. Hines*, 267 Fed. 171, wherein it was held by the eighth circuit court of appeals, that a passenger on the Missouri Pacific Railroad, while operated by the director-general, who was injured, could not maintain an action against the railroad company. But it was stated in the opinion that before the injury the director-general had issued an order that such actions should be brought against him and not otherwise. In a similar case the supreme court of Alabama held, March 18, 1919, that there was no variance. It was said:

"Under this theory of Federal control, the identity of the carrier—the corporate entity—has not been destroyed, nor has it been rendered wholly impotent in respect to its functions in the conduct of the business. It has merely become an agency of the government for the purpose of carrying out the policy of preferring the movement of troops, military equipment, and military supplies over matters of general commerce, and, as such agent, is a bailee of goods committed to it for transportation, and it is sufficient to lay the ownership of the goods in the corporation

in an indictment for the larceny of such goods, or for like offenses."
(*Vaughn v. State*, 81 So. 417, 419.)

In *Brackville v. Telephone Co.*, 107 Kan. 130, 132, 190 Pac.
773, in speaking of the president's proclamation, Mr. Justice
Mason said:

"During the existence of the status established by the proclamation—
until the making of some further order—the defendant corporation con-
tinued to function, as an instrument of the government, which availed
itself not merely of the individuals who had been engaged in carrying on
the business, but of the entire machinery so employed, including the
company itself (the 'owner'), with its board of directors as well as its
other officers, agents and employees. Upon each person acting for the
company in any capacity there devolved in virtue of his place in the
corporate organization the obligation to continue in the performance of
his accustomed duties in behalf of the new head and subject to his con-
trol, but as a part of the original administrative machinery."

It was there held that service of summons would not be set
aside because made on a managing agent of a telephone com-
pany after the property had been taken over by the govern-
ment.

Our statute renders negligible any defect in an information
which does not tend to the prejudice of the defendant's sub-
stantial rights. (Gen. Stat. 1915, § 8024.) The point raised is
so technical as to be almost mechanical, and it must be held
that the trial court ruled correctly.

The judgment is affirmed.